**LIFETIME PRODUCTS, INC., a Utah corporation, Plaintiff,**

v.

**CORRELL, INC., a Missouri corporation, Defendant.**

**FDL, Inc., Plaintiff,**

v.

**Lifetime Products, Inc., a Utah corporation, Defendant.**

**Nos. 2:02 CV 1366 TC, 1:03 CV 0013 TC.**

United States District Court,
D. Utah,
Central Division.

June 30, 2004.

Stephen K. Christiansen, Esq., Bradley
M. Strassberg, Van, Cott, Bagley, Corn-

wall & McCarthy, Salt Lake City, UT, Nancy G. Tinsley, Shiv Ghuman O'Neill, David D. Storey, Baker & Daniels, Indianapolis, IN, Brent P. Lorimer, Larry R. Laycock, David R. Wright, Charles J. Veverka, Lannie Rex Sears, Tige Keller, Clinton E. Duke, Workman Nydegger & Seeley, Salt Lake City, UT, for plaintiff.

Kevin W. Bates, Mark F. James, Esq., Hatch, James & Dodge, Salt Lake City, UT, for defendant.

## ORDER

CAMPBELL, District Judge.

Plaintiff Lifetime Products, Inc. ("Lifetime") is the owner of three United States utility patents: (1) No. 6,431,092 (the " '092 Patent"); (2) No. 6,530,331 (the " '331 Patent"); and (3) No. 6,550,404 (the " '404 Patent") (collectively, the "Lifetime Patents"). The Lifetime Patents are directed at the same subject matter—certain design improvements for a portable folding utility table. The Defendants, Correll, Inc. ("Correll") and FDL, Inc. ("FDL"), both make portable folding utility tables. Lifetime contends that the Defendants' tables infringe various claims of the Lifetime Patents.[1] The Defendants deny the claims of infringement. In turn, they counter that certain claims of the Lifetime Patents are invalid.

The court has before it cross-motions for summary judgment and various non-dispositive motions.

### Background

The Lifetime Patents have a related file history. The '331 and '404 Patents are continuations of the '092 Patent, which is itself a continuation of two design patents.

Lifetime has accused the following Correll tables of infringement: (1) five-foot round; (2) four-foot rectangular;[2] (3) six-foot rectangular; and (4) eight-foot rectangular. All Correll's rectangular tables are of the same design, except for one feature of the four-foot table which is not relevant to the motions. For that reason, the court's analysis of Correll's rectangular tables will apply to all of Correll's rectangular tables. Also, except for a few issues, the analysis of Correll's round table is the same as the analysis of its rectangular tables.

The only FDL table at issue is a six-foot rectangular table.

### Analysis

#### I. *Summary Judgment Standard.*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998).

#### II. *Construction of Disputed Terms of the '092, '331, and '404 Patents.*

The first step towards resolution of these various motions is the construc-

---

1. This memorandum does not analyze infringement of dependent claims, largely because with one exception, the parties do not make any arguments specifically directed at the dependent claims. If any party wishes to have a particular dependent claim or claims

addressed, that party may bring the matter before the court by motion.

2. When referring to rectangular tables, the distance measurement is that of the table's length. For example, Correll's four-foot rectangular table is four feet long.

tion of the claims, which is a question of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). Claim construction begins with "the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 355 F.3d 1361, 1367 (Fed.Cir.2004). A court must look first to the claim language to determine its ordinary meaning, and then to the written description and the prosecution history, if available. *Id.*

■ Importantly, while examining the intrinsic record to determine claim meaning, courts may "always" consult standard and technical dictionaries as well as encyclopedias and treatises as "objective resources that serve as reliable sources of information on the established meanings" of terms. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1203 (Fed.Cir.2002). "If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings." *Id.* A court must also examine the intrinsic record to determine if the patentee has acted as her own lexicographer and defined a term differently from the ordinary meaning. *Id.* at 1204.

■ Finally, after considering the intrinsic record, the "court may, in its discretion, receive extrinsic evidence in order to aid the court in" interpreting the claim language and arriving at a conclusion as to the ordinary meaning of such language. *Markman*, 52 F.3d at 980 (internal quotations and citations omitted). If "an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term ... it is improper to rely on extrinsic evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996); *see also Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed.Cir.1995) (extrinsic evidence cannot change meanings that are clear from the intrinsic record). Importantly, extrinsic evidence, such as expert testimony, " 'may not be used to vary or contradict the claim language' or 'the import of other parts of the specification.' " *Riverwood Intern. Corp. v. R.A. Jones & Co., Inc.*, 324 F.3d 1346, 1358 (Fed.Cir.2003) (quoting *Vitronics*, 90 F.3d at 1584).

■ During the claim construction process, a court must bear in mind that "[w]hen claims are amenable to more than one construction, they should, when reasonably possible, be interpreted to preserve their validity." *Modine Mfg. Co. v. United States Int'l Trade Comm'n*, 75 F.3d 1545, 1557 (Fed.Cir.1996).

### Claim 76 of the '092 Patent

#### "Cross Brace Member"

■ The parties dispute one term of claim 76 of the '092 Patent: "cross brace member." The parties' definitions of cross brace member are set forth in Table 1.

| Table 1—Parties' Claim Constructions for Claim 76 of the '092 Patent | | |
|---|---|---|
| Term, Patent, and Ind. Claim | Pl.'s Interp. | Def.'s Interp. |
| cross brace | Lifetime's interpretation: "an elon- | FDL's interpretation: "[a structure |

member[3] gated member with a longitudinal axis transverse to that of the table top, that either reinforces the center of the table top or that serves to connect the distal ends of the support braces (or other structures) either to the table top or to the frame." (Lifetime's Rep. (86)[4] at 7–8.)

that] lies across the mounting surface of the table top, connects one or both support braces to the table top and provides structural support to the center of the table top." (FDL's Mem. in Opp. (69) at 16.)

As shown by their interpretations in Table 1, the only significant disagreement over the interpretation of cross brace member, which is part of the retaining assembly structure used to connect the table pedestals (legs) to the table, is whether it extends entirely across the mounting surface of the table top (the underside). Lifetime argues that to require the cross brace member to completely extend from side to side would effectively limit the claim to the preferred embodiment. FDL responds that if this limitation is not imposed, then the claim is anticipated by U.S. Patent No. 4,951,576 to Cobos (the "'576 Patent").

Looking first at the ordinary meaning of the claim language, "cross" means "to lie or pass across"; "intersect" means "to lie or be athwart; intersect," and "to move, pass, or extend from one side or place to another." *Webster's New Universal Unabridged Dictionary* 479 (1996) (hereinafter "*Webster's*"). "Brace" is defined as "something that holds parts together or in place, as a clasp or clamp" and "anything that imparts rigidity or steadiness." *Id.* at 250. A "member" is "a constituent part of any structural or composite whole." *Id.* at 1198–99.

The specification confirms that, for at least one preferred embodiment, the cross brace member extends completely across the underside of the table, or in other words, from one side rail to the other:

In one presently preferred embodiment, each of the retaining assemblies 36a, 36b, comprise a cross-brace member having opposing ends and an intermediate body portion formed there between.... The opposing ends of the first and second cross-brace members 36a, 36b, respectively, are configured so as to be introduced and retained within corresponding retaining apertures 46 formed in opposing side rails 42, 44 of the frame 40 or, in the alternative, within opposing, interior side walls of the table top 12.

(FDL's Mem. in Opp. (69), Ex. 1, '092 Patent at col. 13, Ins. 29–44; *see also id.* at Fig. 4 (showing cross brace members 36a and 36b extending full width of table); *id.* at Fig. 5 (similar); FDL's Mem. in Opp. (69), Ex. 2, '331 Patent at col. 6, Ins. 19–24 (similar).) This specification language, however, is not dispositive. The quoted language suggests that other, non-preferred embodiments would still fall within the meaning of the term if the cross brace

---

**3.** This term also appears in claims 19 and 37 of the '331 Patent, and claims 48, 50, 54, and 56 of the '404 Patent. (FDL's Mem. in Supp. (69), Ex. 2, '331 Patent at col. 21, Ins. 54 and 57, and col. 24, Ins. 62 and 65; FDL's Motion for Invalidity (originally document 24 in 1:03CV0013TC) Ex. 1, '404 Patent at col. 34, Ins. 18–23, col. 25, Ins. 38–33, col. 27 Ins. 42–47, and col. 28, Ins. 53–58.) Because the

Lifetime Patents are related and all proceed from one application, the interpretation of this term will be the same for, and will be guided by, the '331 and '404 Patents as well.

**4.** The number given in parentheses in citations to the parties' briefs denotes the docket number for the particular brief being cited.

member did not extend completely across the underside of the table.

The specification also teaches that the retaining assembly, of which the cross brace member is a part, provides support for the table:

> As best shown in FIGS. 1, 2, and 3, the distal ends 28, 34 of each pivotal support brace 24, 30 are engageably secured to the retaining assembly 36 (e.g., cross brace member).... It will be appreciated by those skilled in the art that the retaining assembly 36 generally provides structural support to the center of the table top 12 of the utility table 10.

(FDL's Mem. in Opp. (69), Ex. 2, '331 Patent at col. 6, Ins. 13–26.) Accordingly, the correct construction of cross brace member must include a strength component.

The specification is also helpful in deciding what particular shape or spatial arrangement is required for the cross brace member. The preferred embodiment shows that the cross brace member is a long and thin bar. (FDL's Mem. in Opp. (69), Ex. 1, '092 Patent at col. 13, Ins. 29–44; *see also id.* at Fig. 4) (showing cross brace members 36a and 36b as thin bars extending full width of table); *id.* at Fig. 5 (similar); (FDL's Mem. in Opp. (69), Ex. 2, '331 Patent at col. 6, Ins. 19–24 (similar).)

Pointing to the prosecution history, FDL contends that the '576 Patent to Cobos, which was before the examiner during the prosecution of the Lifetime Patents, bars a definition of cross brace member

that includes the bracket and pin arrangement shown in the '576 Patent. To attach the table legs in such a manner to allow them to fold—the function of the cross brace member—the '576 patent uses brackets with pins to secure the support brace (and the table legs) to the underside of the table. One side of the bracket is secured to the underside of the table, and the legs or support braces are attached to the bracket with a short pin.[5]

The Federal Circuit has noted that: "[i]t is sometimes difficult to balance a patentee's broad claim reading against an assertion that the claims at some indefinite breadth may" read on prior art. *Abbott Labs. v. Baxter Pharm. Prods., Inc.,* 334 F.3d 1274, 1282 (Fed.Cir.2003). Because the '576 Patent was before the examiner, however, Lifetime has "acquiesce[d]" to the conclusion that the '576 Patent "indicate[s] the scope of the ['092 Patent] claims." *Liquid Dynamics,* 355 F.3d at 1367–68. "[I]n other words," the '576 Patent helps define "what the ['092 Patent] claims do not cover." *Id.*

Moreover, because patents are presumed valid, and when possible courts must interpret claims "to preserve their validity," the court must, if possible, give a construction to cross brace member so as to preserve its validity over the '576 Patent. *Modine,* 75 F.3d at 1557. Here, this obligation is heightened by the fact that the '576 Patent was before the examiner. *Ultra–Tex Surfaces, Inc. v. Hill Bros. Chemical Co.,* 204 F.3d 1360, 1367 (Fed. Cir.2000).

---

**5.** The '576 Patent discloses every other limitation of claim 76 of the '092 Patent. As required by claim 76 of the '092 Patent, the '576 Patent table has a table top with first and second ends, a working surface (topside) and a mounting surface (underside) that may be constructed of blow-molded plastic. (FDL's Mem. in Opp. (69), Ex. 8, '576 Patent at col. 6, Ins. 34–37, 49–60, Figs. 1–6.) The '576

Patent table also has a frame with parallel side rails and pivotally connected pedestals, or folding legs. (*Id.* at col. 7, Ins. 18–20, col. 8, Ins. 51–54, Figs. 3, 6, 7, 8, 11, and 14.) Lastly, the '576 Patent has support braces that pivotally connect to both the table legs and the mechanism for securing the support braces to the underside of the table. (*Id.* at col. 8, Ins. 51–54, Figs. 5, 6, and 14.)

In view of the above, the court concludes that the correct construction of cross brace member is a long thin device that: (1) is longer than it is wide; (2) is used as part of the structure that connects the table legs to the table top; (3) imparts strength to the table; (4) lies transverse to, and some distance across, the underside of the table top; and (5) cannot be the bracket and pin arrangement of the '576 Patent to Cobos.

Because it includes devices that extend completely from one side of the table to the other as well as those that do not, this construction preserves the maximum breadth of the claim language without limiting it to the preferred embodiment.

### Claim 92 of the '0 92 patent

### "Retaining Assembly Including a Cross Brace Member"

▮ The parties' proposed definitions of "retaining assembly including a cross brace member" are set forth in Table 2.

| Term, Patent, and Ind. Claim | Pl.'s Interp. | Def.'s Interp. |
|---|---|---|
| retaining assembly including a cross brace member [6] | Lifetime's interpretation: a "retaining assembly including a cross brace member" can be comprised of just a cross brace member, without more. (Lifetime's Cons.Rep. in Supp. (30) at 5.) | Correll's interpretation: "a retaining assembly exists which has as part of its make up the cross brace member but the cross brace member by itself does not constitute the retaining assembly." (Correll's Mem. in Opp. (22) at 16–17.) |

Table 2—Parties' Claim Constructions for Claim 92 of the '092 Patent

The only disagreement in the above proposed constructions is whether a cross brace member by itself meets this term or whether use of the words "assembly" and "including" require that the retaining assembly have other parts with the cross brace member.

The ordinary meaning of "assembly" is "a group of machine parts, esp[ecially] one forming a self-contained, independently mounted unit." *Webster's* at 125. "Include" means "to contain, as a whole does parts or any part or element" and "to contain as a subordinate element; involve as a factor." *Id.* at 967.

The specification teaches that for the preferred embodiment, the retaining assembly is the cross brace member:

In one presently preferred embodiment, each of the retaining assemblies 36a, 36b comprise a cross-brace member having opposing ends and an intermediate body portion formed there between."

(Sears Decl., Ex. A, '092 Patent at col. 13, lns. 29–32.) This suggests that the retaining assembly can be the cross brace member alone, with nothing more.

Correll argues that allowing the preferred embodiment to apply to claim 92 is contrary to the claim language. Correll points out that the claim language uses the word "including" while, as noted above, the specification uses the word "comprise." According to Correll, because Lifetime used the word "including" and not "comprising" in the claim, the term must be

6. This term also appears in claims 19 and 37 of the '331 Patent. (FDL's Mem. in Supp. (69), Ex. 2, '331 Patent at col. 21, lns. 54 and 57, and col. 24, lns. 62 and 65.) Because the Lifetime Patents are related and all proceed from one application, the interpretation of this term will be the same for, and will be guided by, the '331 Patent as well.

construed to include structure other than the cross brace member.

A recent Federal Circuit decision is instructive on the parties' arguments because that court addressed the meaning of the terms including and comprising:

> Comprising is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim. The word include means the same thing. Thus, *a claim reciting "a widget comprising A and B," for example, would be infringed by any widget containing A and B,* no matter that C, D, or E might be present.

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313, 1344–45 (Fed.Cir.2003) (internal quotations and citations omitted) (emphasis added). This view of the meanings of including and comprising is also held by the United States Patent and Trademark Office. *Manual of Patent Examining Procedure* § 2111.03 (8th Ed.2003) ("including" and "comprising" are synonyms that do not exclude additional unrecited elements, but do not require them, while "consisting of" has a different meaning that excludes additional unrecited elements.)

In the present case, using the above-underlined language from *Amgen*—the "widget comprising A"—the "widget" is a retaining assembly and "A" is a cross brace member. Again, following *Amgen,* a product need only have "A" to infringe. This leads to the conclusion that the term including is synonymous with comprising, and specifies what the element must contain, *at a minimum,* to read on the patent. Contrary to Correll's assertion, the claim language retaining assembly *including a cross brace member* means that components other than the cross brace member may be added, but are not required. *Id.; see also Hewlett–Packard Co. v. Repeat-*

*O–Type Stencil Mfg. Corp., Inc.,* 123 F.3d 1445, 1451 (Fed.Cir.1997) (" 'including' is synonymous with 'comprising,' " and other "unnamed components" are "permitted" but not required).

The specification, as discussed above, supports this conclusion. When the inventor defined the preferred embodiment of the retaining assembly as a cross brace member, the inventor was emphasizing that nothing more was needed.

Correll also argues that the prosecution history of this claim element demonstrates that, contrary to the specification and *Amgen,* the retaining assembly including a cross brace member must include more than just the cross brace member. Correll's view of the prosecution history, however, is mistaken. Correll is correct that the Examiner rejected this element as originally claimed—retention member—in original claim 1 because it was anticipated by a 1959 Australian Patent to Sebels. After the applicant submitted new claims, the examiner also rejected the applicant's new term for this element—retaining member—in original claims 92 and 103. Significantly, original claims 1, 92, and 103 did not contain a requirement that the table be made of blow molded plastic.

When the applicant again submitted new claims in response to the rejection, the applicant added limitations requiring: (1) a blow molded table top; and (2) that the retaining assembly include a cross brace member. The claims were subsequently allowed, and as a result, Lifetime argues the addition of the blow molded plastic element was the reason for allowance.

The treatment of another claim in the prosecution history confirm's Lifetime's argument. Original claim 72 (allowed claim 58) contains all the same elements as original claim 92, but also contains the broader term retaining assembly without requiring a cross brace member. Original claim 72 also required that the table top be made of

blow molded plastic. Although original claim 72 contained the same, or broader, retaining assembly that was present in original claims 1, 92, and 103 (which did not have the blow molded plastic requirement), the examiner did not reject claim 72. This leads to the conclusion that the requirement that the table top be made of blow molded plastic was the reason for allowance for original claim 72.

Accordingly, the court concludes that the addition of cross brace member to the retaining assembly element of claim 92 was not the reason for allowance.

Based on the above, the court's construction of retaining assembly including a cross brace member is: A machine part (or parts) that acts as a whole to retain the table legs, and that may consist of only a cross brace member, or there may be other parts in addition to the cross brace member.

### "Frame Including a Pair of Generally Disposed Side Rails"

■ The parties' competing definitions of this term are set forth in Table 3.

| Table 3—Parties' Claim Constructions for Claim 92 of the '092 Patent | | |
| --- | --- | --- |
| Term, Patent, and Ind. Claim | Pl.'s Interp. | Def.'s Interp. |
| frame including a pair of generally disposed side rails | Lifetime's interpretation: "A frame may consist only of side rails alone." (Lifetime's Rep. in Supp. (30) at 12–13.) | Correll's interpretation: "Structure that is composed of parts fitted together and united that may include side rails, but is not composed only of side rails." (Correll's Mem. in Opp. (22) at 23.) |

Much like the term "retaining assembly including a cross brace member," the construction of this term turns on the word including. The parties' arguments are similar to those made in connection with the previous term. Correll contends that use of the word including means that the frame requires both generally parallel side rails and other parts. Lifetime takes the position that although side rails are required, other parts are not.

"Frame" means "a rigid structure formed of relatively slender pieces, joined so as to surround sizable empty spaces or nonstructural panels, and generally used as a major support in buildings or engineering works, machinery, furniture, etc." *Webster's* at 760.

The specification expressly teaches that the frame may be made of two side rails

alone, or it may be made of two end rails alone. The specification reads:

> The frame 40 may comprise a first side rail 42 and an opposing second side rail 44. Preferably, the first side rail 42 is disposed substantially parallel the opposing second side rail 44.... [T]he frame 40 may also comprise a first end rail 54 and an opposing second end rail 56. Preferably, the first end rail 54 is disposed substantially parallel to the opposing end rail 56.

(Sears Decl., Ex. A, '092 Patent at col. 5, lns. 43–46; *id.* at col. 6, lns. 22–25.)

The same analysis under *Amgen* that applied to the retaining assembly element applies here, leading to the conclusion that while the frame must contain either generally parallel side or end rails, other components may be added to the frame, but are not required.[7]

---

7. Based on the definition of the word frame, Correll argues that the side rails must be "united" by some structure to form a frame. As noted above, the ordinary meaning of the

The specification also demonstrates that the frame does not necessarily have to provide support to the table:

In one presently preferred embodiment of the present invention, the frame 40 is formed of a substantially sturdy, rigid material sufficient to provide structural integrity to the table top 12. For example, the frame 40 may be formed of metal. However, it will be readily appreciated that the frame may be formed of a wide variety of other suitable materials which are consistent with the spirit and scope of the present invention. It will further be appreciated that the size and configuration of the frame 40 will depend, in part, on the size and configuration of the table top 12.

(*Id.* at col. 7, lines 4–13.)

Based on the above, the court's construction of frame including a pair of generally disposed side rails is: A structure formed of relatively slender pieces or parts, fitted or joined to the table, that may be side rails alone or end rails alone, and other components may also be added, but are not required." [8]

### *"A First End, A Second End"*

■ The parties' proposed constructions are set forth in Table 4.

| Table 4—Parties' Claim Constructions for Claim 92 of the '092 Patent | | |
|---|---|---|
| Term, Patent, and Ind. Claim | Pl.'s Interp. | Def.'s Interp. |
| a first end, a second end [9] | Lifetime's interpretation: "the meaning of end includes the part of an area that lies at the boundary," which allows a round table to have "ends." (Lifetime's Rep. in Supp. (30) at 14.) | Correll's interpretation: end means "the extreme or last part lengthwise," which prevents a round table from having "ends." (Correll's Mem. in Opp. (22) at 24.) |

Correll argues that its round table cannot have ends. Lifetime responds that the word "end" merely means the part of an object near its boundary, and therefore a round table has ends.

The ordinary meaning of "end" is "the last part or extremity, lengthwise, of anything that is longer than it is wide or broad," "a point, line, or limitation that indicates the full extent, degree, etc., of something; limit; bounds" and "a part or place at or adjacent to an extremity." *Webster's* at 641. The first definition— "the last part or extremity, lengthwise, of

---

word frame does require that the parts of the frame be joined, but does not require that the parts be joined by another part of the *frame.* In the present case, the parts of the frame of the Correll table are joined; *they are joined* by the *table top.* Under the ordinary meaning of frame and the teachings of the specification, that is enough.

8. In the context of claim 34 of the '331 Patent, the parties again dispute the interpretation of the term "frame," but this time do so as a singular term and without any modifying limitations, as were present above. Because the interpretation of "frame including a pair

of generally disposed side rails" of claim 92 of the '092 Patent necessarily provides a construction of the word frame, there is no need to define that word again, or to look again to the intrinsic record for guidance as to its meaning with respect to the '331 Patent.

9. This term also appears in claim 19 of the '331 Patent. (FDL's Mem. in Supp. (69), Ex. 2, '331 Patent at col. 21, ln. 40.) Because the Lifetime Patents are related and all proceed from one application, the interpretation of this term will be the same for, and will be guided by, these patents as well.

anything that is longer than it is wide or broad"—supports Correll's argument because round tables are not longer than they are wide. The remaining definitions, however, require only that and end be a limit, a boundary, or an extremity.

The specification, teaches that the invention may include a circular table top:

> Accordingly, the table top 12 and the frame 40 may be configured in a variety of shapes and configurations, including, but not limited to, a *circle*, polygon, square, rectangle, triangle, or any other suitable geometrical configuration.

(Sears Decl., Ex. A, '092 Patent at col. 7, lns. 13–17 (emphasis added).)

Correll's contention that the limited definition of end applies here is not persuasive in view of this instruction from the Federal Circuit: "If more than one dictionary definition is consistent with the use of the words in the intrinsic record, the claim terms may be construed to encompass all such consistent meanings." *Texas Digital,* 308 F.3d at 1203. Here, the broader construction—that end means the limit or boundary of an object—is proper because it encompasses, and is consistent with, the narrower construction advanced by Correll.

Based on the above, a first end and a second end mean the limit or boundary of an object, or in other words, at the edge of the round table.

### Claims 48, 50, 54, and 56 of the '404 Patent

#### "Generally Adjacent"

■ In claims 48, 50, 54, and 56 of the '404 Patent, the parties dispute the terms "cross brace member" (which the court has previously constructed), "generally adjacent," "connected to the table top," and "lip." The parties' proposed constructions of generally adjacent are set forth in Table 5.

| Term, Patent, and Ind. Claim | Pl.'s Interp. | Def.'s Interp. |
|---|---|---|
| Table 5—Parties' Claim Constructions for Claims 48, 50, 54 and 56 of the '404 Patent | | |
| generally . . . adjacent | Lifetime's Interpretation: "adjacent" means in contact with. (Lifetime's Mem. in Opp. (originally document 26 in 1:03CV0013TC) at 7–8.) | FDL's Interpretation: "adjacent means lying near, not distant, close, but not necessarily touching." (FDL's Rep. Mem. in Supp. (48) at 4–5.) |

The ordinary meaning of the claim term "generally" is "usually, commonly; ordinarily" and "for the most part." *Webster's* at 795. "Adjacent" means "lying near, close, or contiguous; adjoining; neighboring." *Id.* at 25. "Adjoin" means "to be close to or in contact with," "adjoining" means "being in contact at some point or line; located next to another; bordering," and "neighboring" means "situated or living near." *Id.* at 1286. In the context of the '404 Patent, the support pedestal (table leg) in the collapsed position would be close to, near, bordering, or in contact with the mounting surface (underside) of the table.

The specification is not helpful in refining this construction because it simply repeats the term adjacent, without clarification:

> Preferably, a pair of securing members 152 are disposed in relation to the mounting surface 14 for releasably securing a respective support pedestal 18, 20 in the collapsed position adjacent the mounting surface 14.

(FDL's Motion for Invalidity (originally document 24 in 1:03CV0013TC) Ex. 1, '404 Patent at col. 11, lns. 23–26.)

Lifetime argues that United States Patent No. 5,921,623 to Nye (the "'623 Patent"), which has been assigned to Lifetime, makes clear that the table legs of the '404 Patent, when in the collapsed position, are in contact with the underside of the table. (Sears Decl. (originally document 27 in 1:03CV0013TC), Ex. A, '623 Patent.) Lifetime is correct that in the '623 Patent, when the table legs are collapsed, they are near, but not in contact with, the underside of the table. According to Lifetime, then, because the Examiner considered the '623 Patent during the prosecution of the '404 Patent, the reason for allowance of the '404 Patent was that the table legs of the '404 Patent were in contact with the underside of the table.[10]

But Lifetime's argument does not take into account that the '404 Patent disclosed an element not shown in any of the claims of the '623 Patent—depressions in the table top. This means that the Examiner had at least one additional element in the '404 Patent, not present in the '623 Patent, that could explain why she allowed the '404 Patent.

In short, there is nothing in the claim language nor in the specification that requires the pedestals actually touch or come in contact with the mounting surface of the table. In fact, the claim language mandates a directly opposite conclusion: The pedestals may be "close to" or "near" and still be "adjacent" within the meaning of claims 48, 50, 54 and 56. Moreover, the modifier "generally" suggests even more leeway when interpreting "adjacent." Specifically, the pedestals may be "close to" or "near" the mounting surface of the table "for the most part," meaning that they can be farther away in some instances.

Accordingly, "generally adjacent" means that the pedestals are located or situated close to, near, bordering, or in contact with the underside of the table.[11]

*"Connected to the Table Top"*

■ The parties' proposed constructions are set forth in Table 6.

| Term, Patent, and Ind. Claim | Pl.'s Interp. | Def.'s Interp. |
|---|---|---|
| connected to the table top | Lifetime's Interpretation: "connected to the table top means that the cross brace member itself must be directly connected to the table top." (Lifetime's Mem. in Opp. (originally | FDL's Interpretation: " 'connected to the table top' includes connection to the table top via the frame or by other means." (FDL's Rep. Mem. in Supp. (48) at 8.) |

Table 6—Parties' Claim Constructions for Claims 48 and 54 of the '404 Patent

10. One embodiment of the '404 Patent also appears to have a similar arrangement that allows the pedestals to lie flat when in the collapsed position. (FDL's Motion for Invalidity (originally document 24 in 1:03CV0013TC) Ex. 1, '404 Patent at col. 14, lns. 50–54; *id.* at Fig. 4.) This embodiment, however, does nothing to advance Lifetime's interpretation of the term generally adjacent, and in fact, if anything, it lends support for a definition of "adjacent" that means "close to" or "near."

11. The Honorable Gary L. Taylor of the United States District court for the Central District of California arrived at the same interpretation of "generally adjacent" in another case involving the '404 Patent. *Lifetime Products, Inc. v. Alton Indus., Inc.*, No. SA CV–02–350–GLT(ANx) slip op. at 7–8 (C.D.Cal. Apr. 21, 2004). This provides additional support for the court's interpretation of generally adjacent.

Lifetime argues that the term means that the cross brace members must be directly connected to the table top, without any intervening connection to the frame. FDL disagrees and takes the position that there is no requirement that the cross brace member be connected directly to the table top. FDL argues that other intervening means, such as a connection to the frame, can be used to make the connection to the table top.

The ordinary meaning of the claim term "connected" is "united, joined, or linked," "having a connection," "joined together in sequence; linked coherently." *Webster's* at 431. Here, at its broadest, connected to the table top means that the cross brace member is "united, joined, or linked," to the table top, or in other words, it "ha[s] a connection" to the table top.

The specification supports the argument that the cross brace members may be connected in either of two "alternative" ways: (1) to the frame; or (2) to the table top.

> The opposing ends of the first and second cross-brace members 36a, 36b respectively, are configured so as to be introduced and retained within corresponding retaining apertures 46 formed in opposing side rails 42, 44 of the frame 40 or, in the alternative, within opposing, interior side walls of the table top 12.

(FDL's Motion for Invalidity (originally document 24 in 1:03CV0013TC) Ex. 1, '404 Patent at col. 15, lns. 55–60.)

■ Lifetime asserts that the doctrine of claim differentiation requires the construction it proposes. Under the doctrine of claim differentiation, a court cannot read a limitation into a claim to avoid infringement when that limitation already appears in another claim. *D.M.I., Inc. v. Deere & Co.*, 755 F.2d 1570, 1574 (Fed.Cir. 1985). The Federal Circuit explained:

"[w]hen a limitation is included in several claims but is stated in terms of apparently different scope, there is a presumption that a difference in scope is intended and is real." *Modine Mfg. Co. v. U.S. Intern. Trade Comm'n*, 75 F.3d 1545, 1552 (Fed. Cir.1996). "Such a presumption can be overcome, but the evidence must be clear and persuasive." *Id.* Courts must remember, however, that claim differentiation " 'is a guide, not a rigid rule.' " *Nomos Corp. v. Brainlab USA, Inc.*, 357 F.3d 1364, 1368 (Fed.Cir.2004) (quoting *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed.Cir.1991)).

Lifetime makes two claim differentiation arguments. First, Lifetime argues that the only difference between claims 48 and 54 on one hand, and claims 50 and 56 on the other, is that claims 50 and 56 require the cross brace member be connected to the frame, while claims 48 and 54 require a connection to the table top. Lifetime maintains that these two sets of claims must have different, and mutually exclusive, meanings.

Second, Lifetime argues that independent claim 23 together with dependent claims 27 and 36, which depend on claim 23, support its argument. Independent claim 23 does not claim a cross brace member. Dependent claim 27 requires a cross brace member that is connected to the table top. Dependent claim 36 requires a cross brace member that is connected to the frame. Based on this, Lifetime argues the two connection types must be mutually exclusive.

Initially, Lifetime's claim differentiation arguments are not persuasive because they are not based on claims dependent on the claims at issue. Claims 48 and 54 do not have dependent claims nor do they depend from other claims. As a result,

there are no other closely related claims from which to determine their scope. The Federal Circuit has noted that: "[T]he doctrine of claim differentiation is at its strongest" when a party is trying to read a limitation from a dependent claim into the independent claim on which the dependent claim depends. *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed.Cir. 2004); *see also Sunrace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1302–03 (Fed.Cir.2003) (claim differentiation "is especially strong when the limitation in dispute is the only meaningful difference between an independent and dependent claim, and one party is urging that the limitation in the dependent claim should be read into the independent claim"); *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed.Cir.2001) ("Claim differentiation ... is clearly applicable when there is a dispute over whether a limitation found in a dependent claim should be read into an independent claim, and that limitation is the only meaningful difference between the two.").

Examining more closely Lifetime's first claim differentiation argument—based on claims 50 and 56—reveals another flaw. Lifetime is correct that claims 50 and 56 require the cross brace member be connected to the frame, but that is not the only difference between claims 50 and 56 and claims 48 and 54. Claims 50 and 56 also require that the frame be connected to the table top, a difference not identified by Lifetime. (Keller Decl., Ex. B, '404 Patent at col. 25, lns.9–34; *id.* at col 28, lns. 34–59.) At most Lifetime's argument suggests that an intervening part—in this instance the frame—can be used to connect the cross brace member to the table top. This result does not support Lifetime's proposed construction, but does support FDL's.

Lifetime's second claim differentiation argument—regarding claims 23, 27, and 36—is likewise not persuasive. Claim 27, which is dependent on claim 23, requires the cross brace member be connected to the table top. Claim 36, also dependent on claim 23, requires the cross brace member be connected to the frame. Therefore, the doctrine of claim differentiation is helpful mainly in determining the scope of claims 23, 27, and 36, but does nothing to determine the scope of claims 48 and 54.

FDL also relies on the doctrine of claim differentiation, based on dependent claims 15 and 28 of the '404 Patent and dependent claim 12 of the '092 Patent. But FDL's argument falls short for two reasons. First, these claims do not address the connection of the cross brace member to the frame or table top, which is at issue here, but rather the connection of the table legs to the table top. Second, these dependent claims explicitly make clear that the frame connects the table legs to the table top— explicit language that is missing from claims 48 and 54. (FDL's Motion for Invalidity (originally document 24 in 1:03CV0013TC) Ex. 1, '404 Patent, col. 20, lns. 52–53 ("the frame being sized and configured to connect the first support pedestal and the second support pedestal to the table top").)

In sum, the parties' claim differentiation arguments provide little guidance on the issue of whether the cross brace member must be connected directly to the table top without any intervening connection to the frame.

Based on the ordinary claim language and the specification, and mindful of the Federal Circuit's dictate " 'that claims should be so construed, if possible, as to sustain their validity,' " *Liebel–Flarsheim*, 358 F.3d at 910 (quoting *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed.Cir.1999)), the court construes connected to the table top in claims 48 and 54 of the '404 Patent

as follows: The cross brace member must be directly connected to the table top.

**"Lip"**

 The proposed constructions are in Table 7.

| Term, Patent, and Ind. Claim | Pl.'s Interp. | Def.'s Interp. |
|---|---|---|
| Table 7—Parties' Claim Constructions for Claims 48, 50, 54, and 56 of the '404 Patent | | |
| lip | Lifetime's Interpretation: the lip does not have to be at the edge of the table top. (Lifetime's Rep. in Supp.(110) at 4.) | Correll's Interpretation: "[lip must be located] at the outer edge of the table top." (Correll's Mem. in Opp. (93) at 9.) |

The ordinary meaning of the claim term "lip" is "a projecting edge on a container or other hollow object," and "any edge or rim." *Webster's* at 1120. Therefore, looking at the ordinary meaning alone, without consulting the specification, the meaning of lip would be a projection at the edge or rim of the table. But the specification shows that another construction might be correct. The specification reads:

> As shown in the accompanying figures, the table top 12 may also include an outer lip 159 that is *generally disposed about the outer periphery 144 of the table top 12. Preferably, the lip 159 forms at least part of an outer edge or boundary of the table top 12. One skilled in the art will appreciate that the lip 159 does not have to create the outer edge of the table top 12 and the lip can extend around all or only a portion of the table top 12. . . . The lip 159 is preferably disposed about the outer periphery 144 of the table top 12 and at least a* portion of the lip extends in an opposite direction from the upper or working surface 16 of the table top.

(Keller Decl. (Nov. 25, 2003), Ex. B, '404 Patent at col. 12, lns. 10–18, 41–44 (emphasis added).)

The word "generally" in the phrase "generally disposed about the outer periphery" indicates that the lip will be located near the outer periphery of the table top, but need not be exactly at the periph-

ery. This construction is supported by the specification statement that "[o]ne skilled in the art will appreciate that the lip 159 does not have to create the outer edge." (*Id.* at col. 12, lns. 15–16.)

The proper construction, would be that the lip must be near the periphery, but is not required to be exactly at the periphery, nor is it required to form the table edge.

## III. Invalidity Analysis for the '331, and '404 Patents.

 Patents are presumed valid, and parties seeking to have a claim declared invalid must present clear and convincing evidence of invalidity. *State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1067 (Fed.Cir.2003).

### Invalidity of Claim 34 of the '331 Patent

 FDL seeks to invalidate under 35 U.S.C. § 102(a) claim 34 of the '331 Patent based on a Japanese patent to Sonoda, Application Number 10–75825. Section 102(a) reads:

> A person shall be entitled to a patent unless—: (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, be-

fore the invention thereof by the applicant for patent[.]

35 U.S.C. § 102(a).

Lifetime does not contest that the Japanese patent qualifies as prior art, but argues that it does not disclose all of the elements of claim 34 of the '331 Patent. Specifically, Lifetime maintains that the Japanese patent does not disclose a "frame" or "securing members." [12]

The court has previously in this order construed the term "frame." The parties agree that securing members are parts that firmly fasten or confine the support pedestal in the collapsed position adjacent to the mounting surface of the table top.

Looking at the frame element, as noted above when defined for claim 92 of the '092 Patent, the components of the frame need not be directly joined to each other. In fact, two side rails, not connected to each other but both connected to the table top, may be a frame. Likewise, two unconnected end rails may be a frame. Additionally, the frame need not provide structural support or rigidity to the table because to require it to do so would be limiting the claim to a preferred embodiment.

The Japanese patent discloses various structures, not directly joined together, but all connected to the mounting surface of the table top, that form a frame. Specifically, the Japanese patent discloses at least five structures attached to the table's mounting surface that combine to form a frame: (1) a "hinge bracket" that is secured to the table's mounting surface for attaching the first pedestals to the table, (2) two other "hinge brackets," which are

specified to be metal plates, also secured to the table's mounting surface for attaching the other pedestal to the table; and (3) two "bearing plates" for further securing the other pedestals to the mounting surface.

Just as the two side rails and the two end rails of the '331 Patent attach to the table top, each of these five structures attach to the mounting surface of the table top. Furthermore, if as Lifetime argues, the end rails alone or the side rails alone provide support to the table, then the "bearing plates" and other structures of the Japanese patent, which are at least as substantial as the end or side rails, provide support.

Looking at the securing members element, the Japanese reference teaches "recesses" and "engaging portions" that act to receive and secure the pedestals (table legs). The pedestals of the Japanese table fit into the recesses, and as can be seen from the drawing, are secured by the engaging portions. "Engage" means "to cause to become interlocked; interlock with," *Webster's* at 644, and "interlock" means "to lock one with another." *Id.* at 995. As a result, the Japanese patent teaches securing members to receive and lock, or confine, the table legs, and reads on claim 34 of the '331 Patent. Accordingly, claim 34 of the '331 Patent is anticipated, and rendered invalid, by the Japanese patent to Sonoda, Application Number 10–75825. *In Re Cruciferous Sprout Litigation,* 301 F.3d 1343, 1349–52 (Fed.Cir.2002) (claims invalid as anticipated because prior

---

**12.** Lifetime has admitted that the Japanese patent satisfies every other limitation of claim 34 of the '331 Patent because it did not contest that those limitations were present in the Japanese patent. An examination of the Japanese patent likewise reveals that it teaches all the other elements required by claim 34, including a blow-molded table top, first and second moveable support pedestals connected to the frame, and first and second securing members for receiving and securing the support pedestals. (FDL's Mem. in Supp. (69), Ex. 2, '331 Patent at col. 23, ln. 40 to col. 24, ln. 2; FDL's Rep. in Supp. (111), Ex. 9 at 3–11; FDL's Appx. in Supp., Ex. 3B.)

art reference expressly or inherently disclosed all claim limitations).

Because the Japanese patent to Sonoda invalidates claim 34 of the '331 Patent, there is no need to determine if FDL's or Correll's tables infringe that claim.[13] *EMI Group North Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1352 (Fed. Cir.2001) (holding that it is not necessary to reach infringement issue if claims are invalid).

### Invalidity of Claims 48 and 54 of the '404 Patent

■ Relying on 35 U.S.C. § 102(b), FDL contends that claims 48 and 54 of the '404 Patent are invalid. Section 102(b) reads:

> A person shall be entitled to a patent unless—: (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States[.]

35 U.S.C. § 102(b).

FDL argues that Lifetime sold a picnic table more than one year before filing its application for the '404 Patent. FDL contends that the picnic table contained every limitation of claims 48 and 54.[14] But Lifetime disputes this, and argues first that the picnic table did not have support pedestals (table legs) that were generally adjacent to the underside of the table when the pedestals were collapsed. To support this argument Lifetime asserts that the picnic table is merely an embodiment of the invention of United States Patent No. 5,921,623, which discloses a table with pedestals that when collapsed lie close to, but not touching, the underside of the table. Second, Lifetime argues that the cross brace member of the picnic table is not connected to the table top, and therefore does not meet that limitation of claims 48 and 54.

Looking to Lifetime's first argument, the picnic table's pedestals lie flat when in the collapsed position, and are not in contact with the underside of the table. But the question is whether the pedestals are generally adjacent the underside of the table when in this collapsed position. The court has construed the term generally adjacent to require that the pedestals be located or situated close to, near, bordering, or in contact with the underside of the table. And, as the evidence makes clear, when in the collapsed position, the pedestals of the picnic table are close or near to the mounting surface of the table top. Therefore, the picnic table contains this element of claims 48 and 54 of the '404 Patent.

Lifetime's argument that the picnic table is merely an embodiment of the invention of the '623 Patent is not persuasive.[15] As noted above, however, the picnic table is not merely an embodiment of the '623 Patent because the picnic table contains at least one feature not required by any of the claims of the '623 Patent—depressions

---

13. With respect to Lifetime's claim against Correll for infringement of claim 34, Correll joined FDL's response, which alleges invalidity of claim 34, and makes no separate non-infringement or invalidity arguments.

14. Lifetime did not contest that the picnic table was sold before the critical date of the '404 Patent under 35 U.S.C. § 102(b), and for purposes of summary judgment, that fact is deemed admitted. Indeed, the undisputed evidence shows that a Lifetime picnic table was sold on July 25, 1997, nearly four years prior to the '404 Patent's critical date of Mar 12, 2001, and more than one year prior to the earliest priority date Lifetime can claim, Oct. 21, 1997.

15. According to Lifetime, because the '623 Patent was considered by the examiner during the prosecution of the '404 Patent, and the invention of the '404 Patent was allowed, then the court must show deference to the examiner's decision to allow the '404 Patent.

in the table top. The '404 Patent also requires depressions in the table top. This means that the examiner had at least one additional element in the '404 Patent—depressions in the table top—not present in the '623 Patent, that explains allowance of the '404 Patent. In sum, The picnic table is not merely an embodiment of the '623 Patent and Lifetime cannot escape invalidity merely by arguing deference to the examiner.

Looking to Lifetime's second argument, the cross brace member of the picnic table is not connected to the table top within the meaning of claims 48 and 54 of the '404 Patent because it is first connected to the frame, which is in turn connected to the table' top. As a result, the picnic table does not satisfy both of the disputed claim limitations of Claims 48 and 54 of the '404 Patent and does not invalidate those claims.

## IV. Infringement Analysis for the '092,- '331, and '404 Patents.

█ To prove patent infringement, "the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents." *Deering Precision Instruments, L.L.C. v. Vector Distrib. Sys., Inc.,* 347 F.3d 1314, 1324 (Fed.Cir.2003). In the present case, Lifetime has not claimed infringement under the doctrine of equivalents, so the court must only consider literal infringement.

### Infringement of Claim 76 of the '092 Patent by FDL's Table

█ Lifetime alleges that FDL's table infringes claim 76 of the '092 Patent. But when the accused device is compared to

the construed claim, it is clear that there are at least two reasons why FDL's table does not infringe claim 76 of the '092 Patent. First, the cross brace member of claim 76 is an elongated device—it is long and thin and longer than it is wide. In the FDL table, there are squarish brackets and short pins.

Second, the prior art, specifically the '576 Patent, discloses a bracket and pin arrangement as the structure used to connect the table legs to the mounting surface of the table top. Similarly, the accused FDL table uses a short pin to attach the table leg to a bracket, which is in turn attached to the underside of the table. The only difference between the FDL bracket-and-pin arrangement from that of the '576 Patent is that both sides of the pin are attached to the underside of the FDL table with the bracket, while only one side of the pin is attached to the underside of the '576 Patent table with the bracket.

Accordingly, FDL's table does not infringe because the FDL table uses squarish brackets and pins to connect the table legs to the table top, and if FDL's table does infringe, then claim 76 would read on the invention of the '576 Patent, a result that would render claim 76 invalid.

### Infringement of Claim 92 of the '092 Patent by Correll's Tables [16]

█ The accused Correll tables have a single cross brace member for each of their two retaining assemblies. Because claim 92 requires at a minimum that a retaining assembly be made of a cross brace member, Correll's tables meet this element of claim 92.

---

16. Based on prior art not before this court, Judge Taylor found that claim 92 of the '092 Patent was invalid due to obviousness. *Lifetime Products, Inc. v. Alton Indus., Inc.,* No. SA CV–02–350–GLT(ANx) slip op. at 13–17

(C.D.Cal. Apr. 21, 2004). Aside from the fact that this court does not have the prior art before Judge Taylor, Defendants here have not moved for the invalidity of claim 92.

Similarly, Correll's tables have side rails for a frame and meet this element of claim 92. Furthermore, in view of the court's construction, the Correll five-foot round table top meets the "a first end, a second end" element of claim 92.

Accordingly, Correll's tables infringe claim 92.

### Infringement of Claims 19 and 37 of the '331 Patent by FDL's Table and Correll's Rectangular Tables, and Infringement of Claim 19 by Correll's Round Table

Lifetime alleges that both FDL's table and Correll's rectangular tables infringe claims 19 and 37 of the '331 Patent. Lifetime also alleges that Correll's five-foot round table infringes claim 19.

The court's construction of cross brace member excludes the bracket and pin arrangement of the FDL table. Accordingly the FDL table does not infringe claims 19 and 37 of the '331 Patent.

In its opposition to Lifetime's motion on claims 19 and 37 of the '331 Patent, Correll incorporated by reference its opposition to Lifetime's allegation of infringement of claim 92 of the '092 Patent. Specifically, Correll argues that its tables do not have a retaining assembly including a cross brace member because, according to Correll, that term must include more than just a cross brace member alone. But Correll's argument fails because, as discussed above in connection with claim 92 of the '092 Patent, this element is met by a cross brace member alone.

Moreover, under the court's construction of a first end or a second end, Correll's five-foot round table meets this element of claim 19. As a result, Correll's rectangu-lar tables and its round table infringe claim 19, and its rectangular tables infringe claim 37.

### Infringement of Claims 48, 50, 52, and 54 of the '404 Patent by FDL's Table and Correll's Tables [17]

#### Claims 48 and 54—Correll and FDL

As with claim 76 of the '092 Patent and claims 19 and 37 of the '331 Patent, FDL's table does not infringe claims 48 and 54 of the '404 Patent because these claims also require a cross brace member and FDL's table lacks that element.

As for Correll, it argues (with FDL) that claims 48 and 54 of the '404 Patent are invalid, and that its tables do not have a lip. First, as noted above, claims 48 and 54 of the '404 Patent are not invalid due to the sale of the Lifetime picnic table. Second, under the court's claim construction of the term lip, Correll's tables do have a lip and satisfy that limitation of claims 48 and 54 of the '404 Patent. Accordingly, Correll's tables infringe claims 48 and 54 of the '404 Patent.

#### Claims 50 and 56—Correll

As to claims 50 and 56, Correll's only defense was that its tables do not have a lip—the same defense that failed with respect to claims 48 and 54. As a result, Correll's tables infringe claims 50 and 56 as well.

## V. Non–Dispositive Motions.

### Lifetime's Motion to Strike New Arguments/Evidence Raised in FDL's Reply, or For Leave to File a Surreply

■ In its Motion to Strike New Arguments/Evidence Raised in FDL's Reply or For Leave to File a Surreply, which it filed on January 30, 2004, Lifetime argues that

---

17. Based on prior art not before this court, Judge Taylor found that claim 50 of the '404 Patent was invalid due to anticipation. *Lifetime Products, Inc. v. Alton Indus., Inc.*, No. SA CV–02–350–GLT(ANx) slip op. at 7–8 (C.D.Cal. Apr. 21, 2004). Aside from the fact that this court does not have the prior art before Judge Taylor, Defendants here have not moved for the invalidity of claim 50.

FDL improperly raised new arguments in its reply brief of January 12, 2004. Lifetime argues that FDL improperly raised the following new arguments: (1) that the bracket and pin arrangement of the FDL table does not support the center of the table top; (2) that the '576 Patent to Cobos would anticipate claim 76 of the '092 Patent if the court adopted Lifetime's claim construction; and (3) that Lifetime took certain interpretation or infringement position in *Lifetime Products, Inc. v. Blumenthal Distrib., Inc.*, No. SACV03–33 GLT(ANx) (C.D.Cal.2003), a different case involving the Lifetime Patents. Lifetime's arguments fail, however, because Lifetime had sufficient notice of FDL's arguments.

As to Lifetime's first two points, FDL made both arguments in its opposition. (FDL's Mem. in Opp (69) at 15 n. 5, 18.) In fact, as to Lifetime's second point, FDL even went so far as to state in a section title of its opposition brief that "The pins [of the FDL table] do not provide structural support to the table top." (*Id.* at 18.) Accordingly, Lifetime had adequate notice of FDL's arguments and could have responded in its reply.

Lifetime had adequate notice of the *Blumenthal* case because it made its own arguments based on that case. Further, Lifetime's argument is moot because the court did not rely on the *Blumenthal* case in its analysis of the issues presently before the court.

### Lifetime's Objections to Sanctions for Violation of the Preservation Order

On October 1, 2003, FDL filed its Motion for a Preservation Order because it contended Lifetime had destroyed "boxes" of sales-related documents. Lifetime opposed the motion and argued that the document destruction was "totally innocent" and done according to a document retention policy. (Lifetime's Mem. in Opp. (57) at 3.) In addition, Lifetime contended that the document destruction was harmless because all the destroyed information was available from other sources. Lifetime took the position that a preservation order was not necessary because it had "absolutely no interest in or desire for the destruction of any documents in the future." (*Id.* at 4.) United States Magistrate Judge David Nuffer entered a preservation order because he found that it was in the best interests of the parties to preserve all potentially relevant information. *Lifetime Products, Inc. v. Correll, Inc., et al.*, 2:02CV01366TC (D.Utah Nov. 19, 2003) slip. op. at 2 (docket no. 72) (hereinafter "Preservation Order").

On February 9, 2004, FDL filed its Motion to Exclude the Declaration and Opinions of Lifetime's expert Stephen P. McCarthy for Violation of the Preservation Order. FDL argued that after Judge Nuffer entered the Preservation Order, Lifetime's counsel and Dr. McCarthy both destroyed documents. Lifetime does not dispute that documents were destroyed but contends that the destruction was "unfortunate but innocent." (Lifetime's Mem. in Opp. (122) at 1.) Lifetime also argues that Dr. McCarthy was not subject to the Preservation Order because he did not know of it, and in any event, Lifetime cured any harm resulting from the document destruction by producing the materials from other sources not previously accessed.

On March 24, 2004, Judge Nuffer held that Lifetime breached the Preservation Order. *Lifetime Products, Inc. v. Correll, Inc., et al.*, 2:02CV01366TC (D.Utah Mar. 24, 2004) (docket no. 147). Judge Nuffer ordered several remedial measures. He ordered that the declaration and opinions of Dr. McCarthy be stricken and excluded from consideration on the motions for summary judgment. Judge Nuffer held that if Lifetime referred to or presented Dr. McCarthy's declaration or opinions at trial, the jury would be instructed that Dr.

McCarthy and Lifetime had violated the Preservation Order and as a result, opposing counsel had been prevented from examining certain materials used by Dr. McCarthy in forming his opinions. Judge Nuffer also held that if Lifetime used another expert—an event that would effectively remove the sanction of excluding Dr. McCarthy's declaration and opinions—the court could consider additional sanctions. Finally, Judge Nuffer ordered Lifetime to file a declaration outlining steps taken to ensure Lifetime's compliance with the Preservation Order, which Lifetime has already done.

The court reviews non-dispositive rulings by magistrates under a clearly erroneous or contrary to law standard, while the court reviews dispositive rulings by magistrates under a de novo standard. Fed.R.Civ.P. 72. Because the court has not relied on any extrinsic evidence in the analysis of the issues presented in this case, Lifetime's objections to Judge Nuffer's decision to exclude Dr. McCarthy's declaration and opinions from consideration in the summary judgment motions are moot.

The court concludes, even under a de novo standard of review, that Judge Nuffer's decision was correct. It is clear that Judge Nuffer carefully considered the evidence, including the testimony of Dr. McCarthy.

As regards Lifetime's argument that Dr. McCarthy was not subject to the Preservation Order, the court agrees with Judge Nuffer that this argument is not persuasive. Clearly, it was counsel's responsibility to inform Dr. McCarthy. Otherwise, parties could avoid a preservation or protection order by merely not informing their experts or others that one has been entered.

Accordingly, the court affirms the decision of United States Magistrate Judge Nuffer.

### FDL's Motion to Strike Paragraph's 7 & 8 of the Declaration of Tige Keller

■ On September 25, 2003, Lifetime's counsel Tige Keller submitted a declaration in support of Lifetime's motion for summary judgment of literal infringement. That declaration contained two photographs of FDL's table with labeling added to the photographs by Mr. Keller. FDL contends that Mr. Keller's labels are argumentative because they are offered to show that FDL's table has elements patented by the Lifetime Patents. FDL also argues that Mr. Keller did not properly declare that the photographs were correct likenesses of FDL's table. Lifetime responded that the labels were not being offered as evidence, but merely argument, and submitted a supplemental declaration of Mr. Keller where he declares that the photographs are indeed correct likenesses of the FDL table.

Initially, as to the correctness of the likeness of FDL's table in the photographs, Lifetime's opposition and Mr. Keller's supplemental declaration make clear that Mr. Keller declared that the photographs without the labeling are correct likenesses of FDL's table. Accordingly, the court will not strike paragraphs seven and eight of the original Keller declaration on that ground.

As to the labeling, however, FDL is correct that the labels themselves present an argument that the labeled table parts, which are elements contained in the Lifetime Patents, are present in FDL's table. Lifetime's unwillingness to provide photographs in Mr. Keller's declaration without the labeling is puzzling because it used the same photographs with labels in its memorandum in support to argue infringement. There was no need to include the labels in Mr. Keller's declaration.

Accordingly, the court strikes the labeling, but not the photographs, in Exhibits E and F of Mr. Keller's declaration.

*Lifetime's Motion to Dismiss Declaratory Judgment Claims 39–43 of '331 Patent and to Strike FDL's Motion for Summary Judgment of Invalidity of Claims 39–43 of the '331 Patent; FDL's and Correll's Motions for Relief Appropriate in Light of Covenant Not to Sue*

■ On January 22, 2004, Lifetime executed a covenant not to sue either FDL or Correll for infringement of claims 39–43 of the '331 Patent with regard to the FDL and Correll tables accused of infringement as of that date in this action. Lifetime then moved for dismissal of FDL's claims of invalidity of claims 39–43 of the '331 Patent, and to strike FDL's motion for summary judgment of invalidity. According to FDL and Correll, Lifetime's claims of infringement of claims 39–43 should be dismissed with prejudice, FDL's claims of invalidity of claims 39–43 should be dismissed without prejudice, and all pending motions for summary judgment should be stricken to the extent they seek a validity or infringement determination of claims 39–43 of the '331 Patent.

FDL also seeks an order compelling Lifetime to amend its discovery responses that state Lifetime believes FDL's table infringes claims 39–43 of the '331 Patent.

The January 22, 2004 covenant not to sue eliminates the court's subject matter jurisdiction over claims 39–43. *Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1059 (Fed.Cir.1995) (affirming dismissal with prejudice after plaintiff unconditionally agreed not to sue defendant). In *Super Sack,* the court also dealt with the issue of whether the defendant's invalidity claims should be dismissed with or without prejudice in light of a promise not to sue. The court concluded that the promise not to sue removed any "reasonable apprehension" that the defendant would be sued for infringement on any of the defendant's "past and present products." *Id.* As to future products, the court

held no case or controversy yet existed and the defendant could not maintain its declaratory judgment claims seeking invalidity on that basis alone, without any present products at issue. *Id.* Accordingly, the *Super Sack* court affirmed the dismissal with prejudice because the promise not to sue removed subject matter jurisdiction as to the products at issue as of the date of the promise. *Id.* at 1059–60.

Accordingly, regarding the FDL and Correll products at issue as of January 22, 2004, in this litigation, FDL's and Correll's claims for invalidity of claims 39–43 of the '331 Patent and Lifetime's claims of infringement of claims 39–43 of the '331 Patent are dismissed with prejudice. Further, all pending summary judgment motions are stricken but only to the extent they seek summary judgment of invalidity or infringement of claims 39–43 of the '331 Patent.

FDL's and Correll's motion for an order compelling Lifetime to amend its discovery responses as to its belief that FDL infringes claims 39–43 of the '331 Patent is denied.

### Other Motions to Strike

Because the court did not consider expert testimony in its above analysis on the summary judgment motions, the following motions to strike are moot: (1) Correll's Motion to Strike Portions of the Declaration of Stephen P. McCarthy, filed February 9, 2004; and (2) Lifetime's Motion to Strike the Corrections to the Deposition of R. Byron Pipes, filed February 25, 2004. Additionally, Correll's motion regarding Dr. McCarthy is moot because of Judge Nuffer's March 24, 2004, ruling on Dr. McCarthy's declaration and opinions, and the court's subsequent affirmance of that ruling.

### *Conclusion*

Based on the foregoing, the court finds the following: (1) FDL's table does not

infringe claim 76 of the '092 Patent; (2) Correll's tables infringe claim 92 of the '092 Patent; (3) FDL's table does not infringe claims 19 and 37 of the '331 Patent; (4) Correll's rectangular tables infringe claims 19 and 37 of the '331 Patent; (5) Correll's five-foot round table infringes claim 19 of the '331 Patent; (5) FDL's table does not infringe claims 48 and 54 of the '404 Patent; (6) Correll's tables infringe claims 48, 50, 54 and 56 of the '404 Patent; and (7) claim 34 of the '331 Patent is invalid due to the Japanese patent to Sonoda, Application Number 10-75825.

Accordingly, as to the dispositive motions, the court GRANTS: (1) Defendants' Joint Motion for Partial Summary Judgment of Invalidity of Claims 34 and 39 Through 43 of United States Patent 6,530,-331;[18] (2) Lifetime's Motion for Summary Judgment of Literal Infringement against Correll, and (3) FDL's Cross Motion for Partial Summary Judgment of No Literal Infringement. The court DENIES: (1) Defendants' Joint Motion for Partial Summary Judgment of Invalidity of United States Patent 6,550,404; (2) Lifetime's Cross Motion for Summary Judgment of Non–Anticipation of Claims 34 and 39 Through 43 of United States Patent 6,530,-331; (3) Correll's Cross Motion for Summary Judgment of Non–Infringement, and (4) Lifetime's Motion for Summary Judgment of Literal Infringement against FDL.

As to the non-dispositive motions, the court DENIES: (1) Lifetime's Motion to Strike New Arguments/Evidence Raised in FDL's Reply, or For Leave to File a Surreply; (2) Correll's Motion to Strike the

Declaration of Stephen P. McCarthy; and (3) Lifetime's Motion to Strike the Corrections to the Deposition of R. Byron Pipes. The court GRANTS IN PART and DENIES IN PART: (1) FDL's Motion to Strike Paragraph's 7 and 8 of the Declaration of Tige Keller; (2) Lifetime's Motion to Dismiss Declaratory Judgment Claims 39–43 of the '331 Patent. and to Strike FDL's Motion for Summary Judgment of Invalidity of Claims 39–43 of the '331 Patent; and (3) FDL's and Correll's Motions for Relief Appropriate in Light of Covenant Not to Sue. Lastly, the court AFFIRMS Judge Nuffer's decision on the Preservation Order, and DENIES Lifetime's Objections to the Magistrate's Order Regarding the Declaration and Opinions of Stephen McCarthy.

SO ORDERED.

---

18. As noted above, the court struck those portions of Defendants' Joint Motion for Partial Summary Judgment of Invalidity of Claims 34 and 39 Through 43 of United States Patent 6,530,331, and Lifetime's Cross Motion for Summary Judgment Non–Anticipation of Claims 34 and 39 Through 43 of United States Patent 6,530,331, that address claims 39 through 43. As a result, the court grants the remaining portion of Defendants' motion, and denies the remaining portion of Lifetime's motion.