**SUPER SACK MANUFACTURING CORPORATION, Plaintiff–Appellee,**

v.

**CHASE PACKAGING CORPORATION, Defendant–Appellant.**

No. 95–1001.

United States Court of Appeals, Federal Circuit.

June 15, 1995.

Kay Lyn Schwartz, Gardere & Wynne, L.L.P., Dallas, TX, argued for plaintiff-appellee. With her on the brief was Michael A. O'Neil.

James L. Kurtz, Dorn, McEachran, Jambor & Keating, Chicago, IL, argued for defendant-appellant. With him on the brief was Vangelis Economou.

Before MICHEL, Circuit Judge, SMITH, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

MICHEL, Circuit Judge.

Chase Packaging Corporation (Chase) appeals from the September 1, 1994 order of the U.S. District Court for the Northern District of Texas, No. 3:88–CV–1963–P, dismissing the case with prejudice for lack of a reasonable apprehension of a future infringement suit after Super Sack Manufacturing Corporation (Super Sack) withdrew its infringement allegations, and denying Chase's motion to amend its pleadings to include a declaratory judgment counterclaim of unenforceability due to inequitable conduct. Because the trial court correctly concluded that Super Sack's promise to assert neither U.S. Patent No. 4,143,796 ('796) nor U.S. Patent No. 4,194,652 ('652) against Chase as to any of its past or present products precludes the existence of an actual controversy, we affirm.

### BACKGROUND

In August 1988, Super Sack sued Chase for allegedly infringing the '796 and '652 patents. Chase denied infringement and counterclaimed for declaratory judgments of both noninfringement and invalidity, the latter on anticipation and obviousness grounds. The parties proceeded with discovery, which was completed in June 1989, and submitted a joint pretrial order to the court in August 1989. During this period, in May 1989, Chase filed its first motion for summary

judgment of noninfringement, which motion the trial court denied on August 26, 1991.

In 1990, Super Sack asserted the same two patents against another party, Augusta Bag Company, in the U.S. District Court for the Southern District of Georgia. This latter case was tried to the bench in July 1992, and, in October 1992, the trial court found the patents-in-suit not invalid and not infringed. We summarily affirmed the trial court's decision in September 1993. *Super Sack Mfg. v. Augusta Bag Co.*, 6 F.3d 786 (Fed.Cir.1993) (table).

In February 1993, after a long period of inactivity in the case at bar, Chase again moved for summary judgment, this time as to noninfringement, invalidity, and, raising the issue for the first time, unenforceability due to inequitable conduct. Super Sack initially responded to all three issues on the merits, but argued in a subsequent memorandum that the inequitable conduct issue had not been pled and was therefore not properly before the court. Chase rejoined that Super Sack had, by answering on the merits, waived its procedural objection to the inequitable conduct claim, and that Super Sack was not prejudiced by consideration of the issue in any event. The trial court never ruled on this summary judgment motion.

More than a year later, on May 27, 1994, the trial court directed the parties to confer to determine whether the case should proceed to trial in light of the fact that Super Sack had indicated that it no longer wished to pursue its infringement claims against Chase, and it appeared that, if Super Sack dropped its infringement claim, Chase might then drop its inequitable conduct claim. In June 1994, Chase filed a report to the effect that it was, *inter alia*, unwilling to drop its declaratory judgment counterclaims.

On July 1, 1994, Chase followed up its report with a motion to amend its pleadings to include the inequitable conduct count. At the same time, it filed a motion styled a "Motion Requesting this Court to Order Super Sack to Show Cause as to Why Chase's Motion for Summary Judgment on the Issue of Non–Infringement Should Not be Granted." One week later, Super Sack filed a "Motion to Dismiss for Lack of Jurisdiction or, In the Alternative, Plaintiff's Motion to Dismiss by Order of this Court," citing Federal Rules of Civil Procedure 12(b)(1) and 41(a)(2). Super Sack made the jurisdictional point the focus of its argument. It was, stripped of citations, as follows:

The existence of an actual case or controversy is an absolute jurisdictional prerequisite for declaratory judgments under 28 U.S.C. § 2201. Moreover, an actual controversy must exist at all stages of review, not merely at the time the complaint is filed. The "actual controversy" requirement precludes a declaration regarding the validity or enforceability of claims unless the defendant objectively has a reasonable apprehension that it is facing or will face claims of infringement regarding those [patent] claims.

Super Sack has previously offered to dismiss its claims of infringement if Chase would dismiss its Declaratory Judgment Counterclaims. Super Sack will now go one step further. *Super Sack will unconditionally agree not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase.* This totally removes any current or future apprehension by Chase that it will face claims of infringement regarding the patents-in-suit, and it completely eliminates any actual case or controversy in this case. Without an actual case or controversy, the Court is divested of jurisdiction.

Given that Super Sack has now, if not before, removed any actual controversy between the parties, all remaining issues are moot, and the Court is divested of subject matter jurisdiction over Chase's declaratory judgment claim. Accordingly, the instant action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

(Emphasis added). One aspect of Super Sack's promise not to sue Chase on the '796 and '652 patents is especially noteworthy in the context of the instant appeal: the promise not to sue, as made before the trial court and repeated here, extends *only* to products that Chase made, used, or sold on or before July 8, 1994, the date Super Sack filed its

motion to dismiss. In other words, Super Sack has *not* promised not to sue Chase on these patents for products that Chase first made, used, or sold *after* July 8, 1994. In its reply to Chase's opposition to the motion to dismiss, Super Sack was at great pains to emphasize that it "has not and does not concede its claims of infringement against Chase," but also reiterated that it "has unconditionally promised not to sue Chase in the future for infringement of the patents-in-suit with respect to any products currently manufactured or sold by Chase."

 On September 1, 1994, the trial court granted Super Sack's motion to dismiss. After listing some eighteen motions then before it, the court entered the order as follows:

> Plaintiff moves for dismissal of this action for lack of subject matter jurisdiction as Plaintiff no longer desires to pursue its claims for infringement with respect to any bulk bags previously or currently manufactured or sold by Defendant. Further, Plaintiff reports that it has unconditionally promised not to sue Defendant in the future on the patents-in-suit. Therefore, the Court finds that Plaintiff's Rule 12(b)(1) and Rule 41(a)(2) Motion to Dismiss to be [sic, is] proper and should be granted. In the opinion of this Court, Defendant's Motion to Amend its Pleadings in order to amend its pleadings to include the defense of inequitable conduct/unenforceability of Patent No. 4,143,796 and Patent No. 4,194,652 fails to present sufficient evidence that a continuing case or controversy is present necessitating the continuance of this litigation. In the interest of judicial economy, the Court believes that Defendant's motion should be denied.
>
> In conclusion, the Court ORDERS that:

(1) Defendant's Motion to Amend is Pleadings be **DENIED;**

(2) Plaintiff's Motion to Dismiss for Lack of Jurisdiction or, In The Alternative, Plaintiff's Motion to Dismiss by Order of This Court be **GRANTED;** and

(3) this case be **DISMISSED with prejudice.**

Putting to one side the Rules according to which the parties' respective motions were styled,[1] it is clear that the trial court, fulfilling its obligation as the first custodian of its own jurisdiction, dismissed the case for lack of an actual controversy as required by Article III.[2]

Chase appeals from the trial court's order, contending that Super Sack's promise not to sue, present in motion papers and reported in the trial court's order but *not* memorialized in a covenant, is too indefinite to estop Super Sack from again suing Chase on the '796 and '652 patents as to past and present products and fails to cover future products at all. The uncertainty of the estoppel, Chase argues, leaves intact a controversy that is sufficiently actual to ground jurisdiction over its counterclaim for a declaratory judgment of invalidity. According to Chase,

> Super Sack has *never* "unconditionally agreed not to sue Chase on the patents in suit." Super Sack Brief, pp. 7, 11. Super Sack's moving papers in the trial court never make such a commitment. Super Sack's commitment not to sue has always been limited to Chase's "bulk bags previously or currently manufactured or sold by Chase." Super Sack's statement that they have "unconditionally" agreed not to sue Chase is false. Furthermore, Super Sack has never filed a "covenant not to sue" or an "affidavit not to sue" or similar docu-

1. As we have noted, a motion's substance, rather than its linguistic form alone, determines its nature and thus its legal effect. *Registration Control Sys., Inc. v. Compusystems, Inc.,* 922 F.2d 805, 808, 17 USPQ2d 1212, 1214 (Fed.Cir.1990). *See also* 2A JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 7.05 at 7–18 (1994).

2. Chase makes much of the fact that Rule 41(a)(2), one of the two rules on which Super Sack relied before the trial court and which the trial court referred to in its order, cannot be used to dismiss the case at bar. As we have observed countless times, however, we review judgments, not opinions, *Milliken Research Corp. v. Dan River, Inc.,* 739 F.2d 587, 593, 222 USPQ 571, 576 (Fed.Cir.1984), and we "need not close [our] eyes to the record where, as in this case, there is a way clearly open to affirm" the trial court's action, *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,* 910 F.2d 804, 814, 15 USPQ2d 1481, 1489 (Fed.Cir.1990).

ment indicating a firm commitment that it would not sue Chase.

Super Sack maintains, however, that its promise not to sue Chase is of sufficient strength and breadth to divest the federal courts of subject matter jurisdiction over this declaratory judgment action.

## DISCUSSION

### Standard of Review

■ Whether, upon a particular set of facts, an actual controversy exists for purposes of Article III is a question of law subject to plenary appellate review. *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978, 28 USPQ2d 1124, 1127 (Fed.Cir. 1993). "A district court's view of the legal effect of the fact pattern before it is not," however, "to be lightly disregarded." *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735, 6 USPQ2d 1685, 1688 (Fed.Cir.1988).

### Analysis

■ A declaratory judgment counterclaim, according to the relevant procedural provision, may be brought to resolve an "actual controversy" between "interested" parties. 28 U.S.C. § 2201(a) (Supp. V 1993). The existence of a sufficiently concrete dispute between the parties remains, however, a jurisdictional predicate to the vitality of such an action. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 633–34, 19 USPQ2d 1545, 1547 (Fed.Cir.), *cert. denied*, 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). Indeed, the "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). The burden is thus on Chase "to establish that jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed." *International Med. Prosthetics Research Assocs. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575, 229 USPQ 278, 281 (Fed.Cir.1986).

■ "The long established rule of law is that a declaratory judgment plaintiff must establish an actual controversy on the 'totality of the circumstances.'" *Spectronics*, 940 F.2d at 634, 19 USPQ2d at 1547 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 272, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). In the domain of suits for declarations of patent rights and relationships, a two-part test for determining justiciability has evolved. As we stated in *BP Chemicals*,

> There must be both (1) an explicit threat or other action by the patentee, which creates a *reasonable* apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) *present* activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

4 F.3d at 978, 28 USPQ2d at 1126 (emphasis added). Again, the "purpose of the two-part test is to determine whether the need for judicial attention is real and immediate," in which case the federal courts have jurisdiction, or whether it is "prospective and uncertain of occurrence," in which case they do not. *Id.* Because we test the presence *vel non* of an actual controversy by reference to the facts of each case, generally applicable rules are few. Our cases do, however, mark out the endpoints of the continuum: On the one hand, a party who fears potential infringement liability as a result of its past or present acts can be placed in reasonable apprehension of a suit for patent infringement, and thereupon bring a justiciable declaratory judgment action, by conduct that falls short of an *express* threat of infringement litigation. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 955–56, 3 USPQ2d 1310, 1311–12 (Fed.Cir.1987). On the other hand, a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts, even when a reissue application covering the same claimed subject matter is then pending. *Spectronics*, 940 F.2d at 636–38, 19 USPQ2d at 1549–51. Against this backdrop, we assess Chase's

contention that Super Sack failed to divest the trial court of jurisdiction over the case at bar with its promise not to sue Chase on the '796 and '652 patents.

■ Chase contends, as a threshold matter, that the *form* of Super Sack's promise not to assert the patents—that is, its presence as a statement of counsel in motion papers and briefs, rather than a covenant signed by Super Sack itself and filed with the court—deprives the promise of any power it might otherwise have to moot this case. Specifically, Chase asserts that

> Super Sack's statement "not to sue Chase in the future" is an argument or an offer of Mr. O'Neil, Super Sack's counsel, not a commitment on behalf of Super Sack itself.... Super Sack may later deny that its counsel, Mr. O'Neil, had authority to make the statement that it would not ever sue Chase in the future. Unquestionably, Chase still has a reasonable apprehension of suit.

We disagree. Super Sack cannot free itself of the estoppel that its counsel has created with respect to Chase merely by retaining different counsel, and no rule of agency law with which we are familiar can relieve Super Sack of the estoppel on the ground that its current counsel acted *ultra vires*. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34, 82 S.Ct. 1386, 1390–91, 8 L.Ed.2d 734 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'") (quoting *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1879)). Super Sack itself is bound, both now and in the future, by its promise not to sue Chase.

The legal effect of Super Sack's promise not to sue is the heart of the matter, and the trial court acted consistently with that legal effect. In short, although Chase may have some cause to fear an infringement suit under the '796 and '652 patents based on prod-

ucts that it may develop in the future, Chase has no cause for concern that it can be held liable for any infringing acts involving products that it made, sold, or used on or before July 8, 1994, the day Super Sack filed its *motion to dismiss for lack of an actual controversy*. As to the '796 and '652 patents, Super Sack is forever estopped by its counsel's statement of nonliability, on its face and as explained during oral argument before this court, from asserting liability against Chase in connection with any products that Chase made, sold, or used on or before July 8, 1994. This estoppel, in turn, removes from the field any controversy sufficiently actual to confer jurisdiction over this case. Because Chase can have no reasonable apprehension that it will face an infringement suit on the '796 and '652 patents with respect to past and present products, it fails to satisfy the first part of our two-part test of justiciability.

■ Chase also contends that Super Sack's promise not to sue fails to eliminate the controversy between them because, however absolute it may be with respect to past and present products, the promise does not cover products that Chase may make, sell, or use in the future. But, as our cases have made clear, the second part of our test of declaratory justiciability respecting patent rights requires that the putative infringer's *"present activity"* place it at risk of infringement liability. *BP Chems.*, 4 F.3d at 978, 28 USPQ2d at 1126. *See also Spectronics*, 940 F.2d at 634, 19 USPQ2d at 1548 ("[T]he accused infringer must have *actually* produced or prepared to produce an allegedly infringing product.") (emphasis added); *id.* at 636, 19 USPQ2d at 1549–50 ("Spectronics is required to demonstrate that it *is* engaged in potentially infringing conduct....") (emphasis added); *Arrowhead Indus.*, 846 F.2d at 736, 6 USPQ2d at 1689 ("Plaintiff must be engaged in an *actual* making, selling or using activity subject to an infringement charge or must have made meaningful preparation for such activity.") (emphasis added). Chase has, of course, never contended that it has already taken meaningful preparatory steps toward an infringing activity by planning to make a new product that may later be said to

infringe. And Super Sack's promise not to sue renders any past or present acts of infringement that Chase may or may not have committed irrelevant to the question whether a justiciable controversy remains. The residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity. The only proper course for the trial court was to dismiss the case for lack of jurisdiction, as it did.

■ Finally, Chase attempts to cut our two-step justiciability analysis off at the pass by arguing that the Supreme Court's decision in *Cardinal Chemical Co. v. Morton International, Inc.,* — U.S. —, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), "clearly [up]held the separate viability of an invalidity counterclaim." Chase relies on the Court's observation that "[a] party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement," *id.* at —, 113 S.Ct. at 1975, but only after cutting it loose from the context in which it was made. The question actually before the Supreme Court in *Cardinal* was "whether the affirmance by the Court of Appeals for the Federal Circuit of a finding that a patent has not been infringed is a sufficient reason," *by itself,* "for vacating a declaratory judgment holding the patent invalid." *Id.* at —, 113 S.Ct. at 1969. The Court answered in the negative, but noted "that factors in an unusual case might justify [the Federal Circuit's] refusal to reach the merits of a validity determination," *id.* at —, 113 S.Ct. at 1978, making the decision a relatively narrow one. In other words, according to *Cardinal,* a claim for a declaratory judgment of invalidity is independent of the patentee's charge of infringement in the following—and only the following—way: an affirmed finding of noninfringement does not, without more, justify a reviewing court's refusal to reach the trial court's conclusion on invalidity. *Id.* The instant case comes to us in a posture far removed from the one scruti-

nized in *Cardinal:* here, the trial court neither made a finding on infringement nor reached a conclusion on validity. *Cardinal,* addressed to the propriety of appellate jurisdiction over final judgments respecting infringement and validity, simply does not apply.

Contrary to Chase's contention, "a party seeking a declaratory judgment [still] has the burden of establishing the existence of an actual case or controversy." *Id.* at —, 113 S.Ct. at 1974 (citing *Aetna Life Ins.*). *Cardinal* does not revolutionize the justiciability of declaratory judgment actions attacking a patent's validity, in the manner that Chase suggests or otherwise, and nothing in *Cardinal* undermines our decisions on declaratory justiciability at the trial court level, decisions according to which jurisdiction was clearly wanting in the instant case.

### Conclusion

In sum, the trial court did not err in concluding that post-filing events rendered moot the controversy in this case. To proceed would have involved the court in rendering a forbidden advisory opinion. *Aetna Life Ins.,* 300 U.S. at 239–41, 57 S.Ct. at 463–64.

Having duly considered and rejected Chase's other arguments on appeal, we affirm the order of the trial court denying Chase's motion to amend its pleadings, granting Super Sack's motion to dismiss for lack of jurisdiction, and dismissing the case with prejudice.

*Affirmed.*

### Costs

Each party to bear its own costs.