**AMANA REFRIGERATION, INC.,**
**Plaintiff–Appellant,**

v.

**QUADLUX, INC., Defendant–Appellee.**

No. 98–1200.

United States Court of Appeals,
Federal Circuit.

April 5, 1999.

Stephen J. Holtman, Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, Iowa, argued, for plaintiff-appellant. With him on the brief were David A. Hacker, and Gregory G. Williams.

Richard L. Spinogatti, Proskauer Rose LLP, New York, New York, argued, for defendant-appellee. With him on the brief was Scott A. Eggers. Of counsel on the brief were Roger T. Stetson, and Michael R. Reck, Belin Lamson Zumbach Flynn, Des Moines, Iowa. Of counsel was Margaret C. Callahan.

Before MAYER, Chief Judge, ARCHER, Senior Circuit Judge, and LOURIE, Circuit Judge.

MAYER, Chief Judge.

Amana Refrigeration, Inc. ("Amana") appeals the order of the United States District Court for the Northern District of Iowa in *Amana Refrigeration, Inc. v. Quadlux, Inc.*, No. 96–CV–350 (N.D.Iowa Dec. 24, 1997), which granted Quadlux, Inc.'s ("Quadlux") motion to dismiss Amana's action seeking declaratory and injunctive relief pertaining to the validity and infringement of Quadlux's U.S. Patent No. 5,517,005 (the " '005 patent"), and damages for defamation and trade libel. We affirm.

*Background*

Quadlux, a California corporation with its principal place of business in California, owns the '005 patent, which claims a "Visible Light and Infra–Red Cooking Apparatus" that cooks food as quickly as a microwave oven, but with results similar to those achieved in a conventional oven. Quadlux manufactures and sells a commercial embodiment of its invention, the "FlashBake" oven. Amana, a Delaware corporation with its principal place of business in Iowa, commenced negotiations with Quadlux to license the FlashBake technology in August 1993, and the two companies entered into a confidentiality agreement. Quadlux representatives made two visits to Amana headquarters in Iowa over the course of the negotiations, but negotiations ended unsuccessfully in February 1994, after Quadlux decided to license the technology to another appliance manufacturer.

Amana then developed and started to market its WAVE ovens. Like Quadlux's FlashBake ovens, the WAVE ovens use a combination of visible and infrared radiation to cook food. On November 21, 1996,

counsel for Quadlux sent a warning letter to Amana in Iowa, enclosing a copy of the '005 patent, which had issued May 14, 1996, and stating that Quadlux intended to enforce both the patent and the confidentiality agreement. Additionally, Quadlux sent letters terminating its contractual relationship with three distributors in Maryland, Ohio, and Illinois because those distributors dealt with Amana, whom Quadlux asserted was "going to proceed with the introduction of a copy of the FlashBake oven."

Amana sued Quadlux in the United States District Court for the Northern District of Iowa, seeking, *inter alia,* declaratory judgments of patent invalidity and noninfringement, and damages for defamation and trade libel, both Iowa state law claims. In response, Quadlux filed a July 31, 1997, declaration by its president and chief executive officer, Phillip Samper, covenanting not to "assert any claim of patent infringement against Amana under [the '005 patent] as it presently reads, with respect to any product currently advertised, manufactured, marketed or sold by Amana, or any product which was advertised, manufactured, marketed or sold by Amana prior to the date of this declaration."

The trial court dismissed Amana's declaratory judgment actions as moot in light of the Quadlux covenant, and dismissed Amana's defamation and trade libel claims for lack of personal jurisdiction over Quadlux. Amana appeals.

## Discussion

### Actual Controversy

 Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (1994), a district court has jurisdiction over a declaratory judgment action only when there is an "actual controversy." "Whether an actual controversy exists upon particular facts is a question of law, and is subject to plenary appellate review." *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978, 28 USPQ2d 1124, 1127 (Fed.Cir.1993).

For an actual controversy to exist, "[t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Id.* at 978, 28 USPQ2d at 1126.

 Although an actual controversy may have existed before Quadlux filed its covenant not to assert a patent infringement claim against Amana, it is not necessary for us to address that issue. "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed," *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) (citation omitted), and it is clear that no controversy survives the Quadlux covenant. We have held that a covenant not to sue for any infringing acts involving products "made, sold, or used" on or before the filing date is sufficient to divest a trial court of jurisdiction over a declaratory judgment action. *See Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054, 1060, 35 USPQ2d 1139, 1144 (Fed.Cir.1995). Similarly, Quadlux's promise not to assert any infringement claim against Amana under the patent as it presently reads, with respect to any product previously or currently advertised, manufactured, marketed, or sold by Amana, removed any reasonable apprehension that Amana will face an infringement suit based on its activities before the filing date.

Amana argues that the Quadlux covenant did not remove Amana's reasonable apprehension of being sued with regard to its new products "in the pipeline," but not advertised, manufactured, marketed, or sold before the filing date. However, an actual controversy cannot be based on a fear of litigation over future products. *See id.* ("The residual possibility of a future infringement suit based on [the alleged

infringer's] future acts is simply too speculative a basis for jurisdiction over [the alleged infringer's] counterclaim for declaratory judgments of invalidity."). The Quadlux covenant ensures that Quadlux is forever estopped from asserting liability against Amana in connection with any products that Amana advertised, manufactured, marketed, or sold before July 31, 1997, and that resolves the controversy.

Amana also argues that Quadlux's promise not to assert a claim based on the patent "as it presently reads" subjects Amana to risk of further litigation on the '005 patent subject matter because of the potential grant of a reissue patent. We rejected this argument in *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 637, 19 USPQ2d 1545, 1550 (Fed.Cir.1991), holding that "[a]lthough Spectronics may have some cause to fear a suit for future infringement of substantively non-identical claims after reissue, it has no cause for concern that it can be held liable for practicing the invention claimed in the '366 patent." Here, as in *Spectronics,* the future existence of a reissue patent is wholly speculative and, therefore, cannot create a present controversy.

### Personal Jurisdiction

█ We turn now to Amana's assertion that the district court had personal jurisdiction over Quadlux for the purposes of Amana's trade libel and defamation claims. Amana contends that the court erred in analyzing the personal jurisdiction issue under Eighth Circuit law rather than Federal Circuit law.

█ Although under our courtesy rule we are generally guided by the law of the regional "circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law," *Molins PLC v. Quigg,* 837 F.2d 1064, 1066, 5 USPQ2d 1526, 1527 (Fed.Cir.1988) (citation omitted), we have applied our own law to both substantive and procedural issues "intimately involved in the substance of

enforcement of the patent right," *Viam Corp. v. Iowa Export–Import Trading Co.,* 84 F.3d 424, 428, 38 USPQ2d 1833, 1835 (Fed.Cir.1996). Thus, in several contexts, we have applied Federal Circuit law in determining whether district courts have personal jurisdiction over parties in patent actions. *See, e.g., Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564–65, 30 USPQ2d 1001, 1006 (Fed.Cir. 1994) (applying Federal Circuit law in determining whether district court had personal jurisdiction over an out-of-state corporation accused of patent infringement); *Akro Corp. v. Luker,* 45 F.3d 1541, 1543, 33 USPQ2d 1505, 1506–07 (Fed.Cir.1995) (Federal Circuit law governs personal jurisdiction issue when the out-of-state party is the patentee defending a declaratory judgment action, rather than the alleged infringer); *Viam,* 84 F.3d at 428, 38 USPQ2d at 1835 (applying Federal Circuit law in holding that the district court had personal jurisdiction over out-of-state patentee defending an action seeking declaratory judgment of invalidity and noninfringement).

More recently, in *3D Systems, Inc. v. Aarotech Lab., Inc.,* 160 F.3d 1373, 1377–78, 48 USPQ2d 1773, 1776 (Fed.Cir.1998), we applied Federal Circuit law in determining that the district court had personal jurisdiction over Aaroflex, an out-of-state corporation defending an action involving a patent infringement claim and state law claims of trade libel and unfair competition. Because the patentee's trade libel and unfair competition claims went "hand-in-hand with its patent infringement claims," arising out of the same facts, and because "resolution of the patent infringement issue [was] a significant factor" in deciding whether the patentee had libeled the accused infringer, the district court had subject matter jurisdiction over all of the claims, and it was appropriate to apply

Federal Circuit law in resolving the personal jurisdiction issue, even though state law claims were involved. *Id.* at 1377, 48 USPQ2d at 1775.

Unlike *Beverly Hills, Akro, Viam,* and *Aarotech,* this case presents a situation in which determination of the personal jurisdiction issue is no longer "intimately involved in the substance of enforcement of the patent right." *Viam,* 84 F.3d at 428, 38 USPQ2d at 1835. As discussed above, no actual controversy over the patent issue exists; the trial court therefore lacks subject matter jurisdiction over it. The remaining state law claims involve a different set of facts, specifically Quadlux's termination letters to its distributors, and are not dependent on a finding of noninfringement.* Under these circumstances, the question of personal jurisdiction over Quadlux as to the state law trade libel and defamation claims is not intimately related to substantive patent law and is most appropriately analyzed under Eighth Circuit law.

Amana argues that our approach amounts to abandonment of our mandate to achieve national uniformity in the field of patent law, and will result in multiple jurisdictional analyses in the same case, with different conclusions on the personal jurisdiction issue as to patent and non-patent claims. This argument does not take into account the absence of an actual patent controversy in this case. Our mandate to achieve uniformity in patent law does not demand that we apply our personal jurisdiction rules to state law claims where no legitimate patent issue exists.

▮ To exercise personal jurisdiction over an out-of-state party, a court must determine whether personal jurisdiction is (1) permitted by the forum state's long-arm statute, and (2) consistent with due process. *See Burger King v. Rudzewicz,*

471 U.S. 462, 471–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Because personal jurisdiction in Iowa reaches to the limits of due process, *see Hicklin Eng'g, Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir. 1992), the inquiry here is whether exercise of personal jurisdiction over Quadlux in Iowa is consistent with due process.

▮ The trial court properly held that exercising personal jurisdiction over Quadlux in Iowa would be inconsistent with due process. In this analysis, Eighth Circuit law requires courts to evaluate the out-of-state party's contacts, considering "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d 816, 819 (8th Cir.1994). "The first three factors are of primary importance." *Id.*

Quadlux's Iowa contacts do not relate to Amana's trade libel and defamation claims. Significantly, these claims arise not from any of Quadlux's Iowa contacts, but from the three letters sent by Quadlux to distributors in Maryland, Ohio, and Illinois. Moreover, Quadlux's Iowa contacts are very limited. As the trial court found,

> Quadlux has no interest in any property in Iowa, and has visited the state on only two occasions in the course of discussing a potential business arrangement with Amana, upon which the parties never reached agreement. Quadlux has solicited sales through national publications, and sent a letter of inquiry or warning to Amana regarding the '005 patent and their confidentiality agreement. Additionally, it appears that Quadlux has made only very limited sales of ovens in Iowa.

---

* In letters terminating its contracts with the Maryland, Ohio, and Illinois distributors, Quadlux alleges that Amana was "going to proceed with the introduction of a copy of the FlashBake oven." "Copying" is the key issue, not patent infringement.

*Amana,* No. 96–CV–350. We agree that the nature and quality of these contacts are too limited to permit an Iowa court to exercise personal jurisdiction over Quadlux.

*Conclusion*

Accordingly, the order of the United States District Court for the Northern District of Iowa is affirmed.

*AFFIRMED.*