SCHALL, Circuit Judge,
dissenting.
The court holds that the district court erred in ruling that Fort James’s covenant not to sue Solo Cup for patent infringement divested the court of subject matter jurisdiction over Solo Cup’s counterclaim for a declaration that the ’140 patent was unenforceable. In my view, however, Fort James’s covenant not to sue eliminated any live case or controversy between the parties and thereby rendered Solo Cup’s un-enforceability counterclaim moot. I thus would affirm the judgment of the district court. I therefore respectfully dissent.
I.
The Declaratory Judgment Act states that “any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration,” provided there exists “a case of actual controversy within its jurisdiction.” 28 U.S.C. § 2201(a) (2000). The statute requires a court to determine whether “there is a substantial controversy, between parties having adverse legal inter *1352 ests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.” Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In determining whether such a controversy exists with respect to claims for patent-based declaratory relief, we have developed a two-part test under which:
[tjhere must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity-
BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed.Cir.1993); see also Teva Pharm. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324, 1332 (Fed.Cir.2005). “The element of threat or reasonable apprehension of suit turns on the conduct of the paten-tee, while the infringement element depends on the conduct of the asserted in-fringer.” BP Chems., 4 F.3d at 978.
A party seeking a declaratory judgment bears the burden of establishing the existence of an actual controversy. Sierra Applied Scis. v. Advanced Energy Indus., Inc., 363 F.3d 1361, 1373 (Fed.Cir.2004). Moreover, the “actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.” Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975). Accordingly, the declaratory-judgment plaintiff has the burden of establishing that “jurisdiction over its declaratory judgment action existed at, and has continued since, the time the [counterclaim] was filed.” Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1058 (Fed.Cir.1995) (citation omitted); Sierra Applied Scis., 363 F.3d at 1373. We have therefore held that a pat-entee may divest a court of subject matter jurisdiction over an accused infringer’s declaratory judgment action by covenanting not to sue the accused infringer for past or present acts of infringement. Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 855-56 (Fed.Cir.1999); Super Sack, 57 F.3d at 1059-60.
In Super Sack, for example, Super Sack Manufacturing Corporation (“Super Sack”) sued Chase Packaging Corporation (“Chase”) for infringement of two of its patents. 57 F.3d at 1055. Chase denied infringement and counterclaimed for declaratory judgment of non-infringement and invalidity. Id. After completion of discovery, Super Sack moved for summary judgment, which the trial court denied. Id. at 1055-56. Chase subsequently moved for summary judgment of non-infringement and invalidity. The court did not, however, rule on Chase’s motion. Id. at 1056. Subsequently, Chase requested that the court consider its summary judgment motion. In addition, Chase sought leave to amend its pleadings to include an inequitable conduct counterclaim. Id. Super Sack then filed a motion to dismiss the case for lack of jurisdiction based on its promise “not to sue Chase for infringement as to any claim of the patents-in-suit based upon the products currently manufactured and sold by Chase.” Id. The district court granted Super Sack’s motion and dismissed the case.
On appeal, we affirmed the district court’s decision to dismiss the case for lack of jurisdiction. We reasoned that, in view of Super Sack’s covenant not to sue, “Chase can have no reasonable apprehension that it will face an infringement suit on the ’796 and ’652 patents with respect to past and present products,” and that Chase’s counterclaims therefore “fail[] to satisfy the first part of our two-part test of justiciability [of claims for declaratory *1353 judgment].” Id. at 1059. At the same time, we rejected Chase’s argument that a case or controversy persisted because Super Sack’s covenant did not apply to products developed in the future. In doing so, we pointed out that “the second part of our test of declaratory justiciability respecting patent rights requires that the putative infringer’s 1present activity’ place it at risk of infringement liability.” Id. (quoting BP Chems., 4 F.3d at 978) (emphasis in original).
II.
In this case, I understand the court to recognize that, under the holding of Super Sack, “a patentee defending against an action for a declaratory judgment of invalidity can divest the trial court of jurisdiction over the case by filing a covenant not to assert the patent at issue against the putative infringer with respect to any of its past, present, or future acts.”[1] 57 F.3d at 1058. The court holds, however, that Fort James’s covenant did not divest the trial court of subject-matter jurisdiction in this particular case. According to the court, that is because “the Posb-Verdict Covenant had no effect on Fort James’s claim for infringement, because that controversy had already been resolved by the jury’s verdict.” In other words, the court reasons that the rationale of Super Sack does not apply if the patentee issues a covenant not to sue after a finding of non-infringement.
The court states that the Supreme Court decided in Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993), that “a case or controversy adequate to support jurisdiction of a declaratory judgment counterclaim necessarily exists if a party has actually been charged with infringement of a patent.” Relying on Cardinal Chemical, 508 U.S. at 96, 113 S.Ct. 1967, Altvater v. Freeman, 319 U.S. 359, 364, 63 S.Ct. 1115, 87 L.Ed. 1450 (1943), Fin Control Systems Pty, Ltd. v. OAM, Inc., 265 F.3d 1311, 1321 (Fed.Cir.2001), and General Electric Co. v. Nintendo Co., Ltd., 179 F.3d 1350, 1356 (Fed.Cir.1999), the court states that the jury verdict of non-infringement did not moot the case because claims of unenforceability and invalidity raise issues beyond those presented by the infringement claim.
III.
I agree with the court that “a case or controversy adequate to support jurisdiction of a declaratory judgment counterclaim necessarily exists if a party has actually been charged with infringement of a patent.” Cardinal Chem., 508 U.S. at 95, 113 S.Ct. 1967. I further agree that a finding of non-infringement does not, by itself, moot a counterclaim of invalidity or unenforeeability. Where I part company with the court is in my view that Fort James’s covenant had the effect of eliminating any real and immediate controversy between the parties and, therefore, mooted Solo Cup’s counterclaim.
The covenant was submitted by James F. Kelley, Executive Vice President and General Counsel of Georgia-Pacific Corporation (the entity that owns Fort James). Mr. Kelley stated:
I hereby declare that Fort James unconditionally covenants not to assert any claim of patent infringement against Solo Cup Company (“Solo”) under any claim of United States Patent Nos. 4,609,140 (“the 140 patent”), 4,606,496 *1354 (“the ’496 patent”), and 4,721,499 (“the ’499 patent”) with respect to any product currently advertised, manufactured, marketed or sold by Solo, or any product which was advertised, manufactured or sold by Solo prior to December 13, 2002.
It is not disputed that Mr. Kelley had authority to speak for Fort James. Therefore, once Fort James issued the covenant, Solo Cup no longer faced the risk of liability for infringement of the ’140 patent based on past or present acts. That is to say, Solo Cup no longer faced the prospect of Fort James pursuing its original infringement claim' — through, say, an appeal to this court — or the risk of being sued for other present or past acts of perceived infringement. Under these circumstances, I do not see how Solo Cup’s counterclaim continues to satisfy the first prong of our jurisdictional test.
It is true that this ease differs from Super Sack in that Fort James did not issue its covenant until after the jury’s finding of non-infringement, but I do not think that fact creates or, rather, sustains, the controversy between the parties. That is because, while the timing of the covenant may seem unfair to Solo Cup, the fact remains that Solo Cup is no longer at risk of liability for infringement of the ’140 patent. Indeed, the situation in Super Sack actually presented more of a controversy than this case because, there, the defendant still faced the risk of infringement based on future activity, see Super Sack, 57 F.3d at 1059 (acknowledging that the defendant “may have some cause to fear an infringement suit” based on products to be developed in the future), whereas in this case, the 140 patent has expired. Solo Cup therefore faces no risk of liability for infringement of the 140 patent. A decision as to the enforceability of the 140 patent would consequently have no effect on the legal relationship of the parties, i.e., Solo Cup’s claim of unenforceability is moot. See DeFunis v. Odegaard, 416 U.S. 312, 316-17, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974) (holding that the case was moot because the Court could no longer provide meaningful relief); North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (“[Fjederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.”); Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (“A case is moot when the issues presented are no longer ‘live’ or the parties lack a legally cognizable interest in the outcome.”).[2]
My view that there is no longer a live controversy in this case is also unaffected by the fact that it was Fort James that requested the trial court bifurcate the un-enforceability claim from the infringement and invalidity claims. I acknowledge that it may seem unfair to allow a patentee to *1355 first proceed with its infringement claim and then, if the result is not favorable, eliminate the court’s jurisdiction over the accused infringer’s counterclaim by covenanting not to sue the accused infringer. Fairness is not part of the jurisdictional inquiry, however. See Hercules Inc. v. United States, 516 U.S. 417, 430, 116 S.Ct. 981, 134 L.Ed.2d 47 (1996) (“[W]e are constrained by our limited jurisdiction and may not entertain claims ‘based merely on equitable considerations.’” (citation omitted)). Rather, federal courts must determine whether there is an actual case or controversy, i.e., whether “there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment.” Md. Cas. Co., 312 U.S. at 273, 61 S.Ct. 510. If a case is found to lack such a controversy, then the court’s only choice is to dismiss the case.[3]
In short, although an actual controversy may have existed at the time the jury issued its verdict of non-infringement, that controversy became moot when Fort James issued its covenant not to sue. Accordingly, I would affirm the judgment of the district court dismissing Solo Cup’s counterclaim seeking a declaratory judgment that the ’140 patent is unenforceable. I therefore respectfully dissent.

. As discussed, the actual holding of Super Sack was that a covenant not to sue for past or present acts of infringement is sufficient to divest the court of subject-matter jurisdiction. 57 F.3d at 1059.

. Claims for attorney’s fees are collateral to the underlying lawsuit for which the fees are sought. Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200-01, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988) (holding that an attorney's fee award is separate from a trial court’s decision on the merits for purposes of the time limits set for appeals under Fed. R.App. P. 4); Sprague v. Ticonic Nat’l Bank, 307 U.S. 161, 170, 59 S.Ct. 777, 83 L.Ed. 1184 (1939) (indicating that motions for attorney’s fees are “independent proceeding^] supplemental to the original proceeding and not a request for a modification of the original decree”). The issue of attorney’s fees is consequently distinct from, and has no effect on, the question of whether a case has become moot. See Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1329 (9th Cir. 1999) ("No Article III case or controversy is needed with regard to attorney's fees ... because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot.” (emphasis added)).

. This is not to say that Fort James’s overall litigation conduct could not be used by Solo Cup in trying to establish the existence of an "exceptional case” in a timely motion for attorney’s fees under 35 U.S.C. § 285. See Zucker, 192 F.3d at 1329 (holding that a trial court still has jurisdiction to entertain motions for attorney’s fees after the underlying action has become moot); see also Gator.Com Corp. v. L.L. Bean, Inc., 398 F.3d 1125, 1133 n. 1 (9th Cir.2005) (en banc) (Tashima,' J., concurring).