**WARRIOR SPORTS, INC., Plaintiff,**

v.

**STX, L.L.C., Defendant.**

**Case No. 07–14995.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 30, 2009.

Amy E. Rinaldo, Homayune A. Ghaussi, Warner, Norcross, Southfield, MI, Douglas A. Dozeman, Janet L. Ramsey, Warner, Norcross, Grand Rapids, MI, John S. Artz, Dickinson Wright, Bloomfield Hills, MI, for Plaintiff.

James K. Archibald, STX LLC, Baltimore, MD, Peter M. Falkenstein, Jaffe Raitt Heuer & Weiss, PC, Ann Arbor, MI, for Defendant.

### ORDER DISMISSING CASE FOR WANT OF SUBJECT–MATTER JURISDICTION

DAVID M. LAWSON, District Judge.

On November 24, 2007, the plaintiff filed a complaint in this Court alleging that the defendant has sold a model of lacrosse gloves that infringes on the plaintiff's valid patents. The defendant filed an answer denying the material allegations of the complaint and a counterclaim seeking a declaration of noninfringement and invalidity of the patent. The Court entered a scheduling order that, among other things, set a date by which the defendant must notify the Court and the plaintiff of its

intention to assert an advice-of-counsel defense. When the defendant did not comply, the Court issued an order to show cause. In response to that show cause order, defendant STX filed a paper in this Court asserting that it has entered into a partial settlement agreement with the plaintiff whereby the plaintiff will not seek damages for sales occurring on or before July 31, 2009.

It appeared to the Court that the partial settlement agreement rendered the controversy moot; therefore, the Court directed the parties to show cause why the case should not be dismissed for want of jurisdiction. Plaintiff Warrior responded, agreeing that the Court no longer had jurisdiction over the case. STX responded by arguing that the Court has jurisdiction under the Declaratory Judgment Act by virtue of its counterclaim seeking a declaration that Warrior's patents are invalid and unenforceable and do not apply to STX's products. After considering the parties submissions, the Court must conclude that there is presently no justiciable controversy between the parties at this time. The partial settlement has mooted the plaintiff's infringement claim, and STX's plan to market products months into the future is neither sufficiently immediate nor real to establish a ripe controversy and allow the Court to exercise jurisdiction over the case. Therefore, the Court will dismiss the case without prejudice.

## I.

According to the complaint, plaintiff Warrior Sports, Inc. owns at least three patents covering the design of hockey gloves that it manufactures and sells. Defendant STX is a competitor of Warrior and markets a current product line of lacrosse gloves, which Warrior believes infringes one or more of its design patents. The resulting lawsuit was not the first between the parties; another one was pending in this court involving different patent when the present action was filed. In the present case, Warrior sued for infringement and sought damages to be measured by STX's sales of the allegedly infringing products. STX's counterclaim sought a declaration that the patent are invalid, or alternatively that its products do not infringe the patents.

On October 8, 2008, the parties signed a settlement agreement that fully resolved the other lawsuit in this court and also resolved Warrior's claim in the present case for damages for past infringement. According to the settlement document, STX agreed to pay to Warrior $275,000, and Warrior agreed to dismiss any claim for past damages for alleged infringement as of the date of the agreement. Additionally, Warrior agreed to provide STX "with a grace period," which is not further defined, up until July 31, 2009 for gloves sold during that period. As far as the Court can tell, there is no covenant not to sue and no agreement for payment of royalties for future sales. This settlement agreement came to the Court's attention when, in response to an order directing STX to explain why it had not complied with the deadline for announcing its intention to rely on the advice-of-counsel defense, STX cited the settlement agreement and asserted that the factual basis for the defense presently is unknown and "will not come into existence ... until after July 31, 2009." Def.'s Resp. To Show Cause [dkt # 27] at ¶ 2. STX explained further that it would rely on such a defense only as to sales of infringing products after July 31, 2009, "if, indeed, there are any such sales." *Id.* at ¶ 6. STX acknowledged that the settlement amounted to "recently changed circumstances in the case." *Id.* at ¶ 11.

STX's response provoked the Court's latest show cause order due to a concern

over subject-matter jurisdiction. In response to that order, Warrior asserts that the Court lacks subject-matter jurisdiction over the case, and invites the Court to dismiss the case without prejudice. It states that it has not made any threat of litigation for products that STX might sell starting in August 1, 2009, because no one knows what gloves will be included in STX's product line and whether these gloves will infringe Warrior's patents. STX does not dispute that the claims in the plaintiff's complaint have been mooted by the settlement. However, it insists that its declaratory judgment counterclaim presents a live controversy, since, according to the affidavit of its general manager, STX intends to produce the accused models "until and after July 31, 2009," and models marketed after July 31, 2009 will have identical or similar features to those found in the accused models.

## II.

■■ "[A] federal court has a continuing duty to ensure that it adjudicates only genuine disputes between adverse parties." *Libertarian Party of Ohio v. Blackwell,* 462 F.3d 579, 584 (6th Cir.2006). "If 'the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome,' then the case is moot and the court has no jurisdiction." *Ibid.* (quoting *Los Angeles County v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). "The mootness inquiry must be made at every stage of a case." *McPherson v. Michigan High School Athletic Ass'n, Inc.,* 119 F.3d 453, 458 (6th Cir.1997) (en banc).

■■ "[R]ipeness 'is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.' ... The ripeness doctrine serves to 'avoid[ ] ... premature adjudication' of legal questions and to prevent courts from 'entangling themselves in abstract' debates that may turn out differently in different settings." *Warshak v. United States,* 532 F.3d 521, 525 (6th Cir. 2008) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior,* 538 U.S. 803, 807–08, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)). The Sixth Circuit has explained that " ' "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." ' *Cooley v. Granholm,* 291 F.3d 880, 883–84 (6th Cir. 2002) (quoting *Texas v. United States,* 523 U.S. 296, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)). As a rule, we do not allow litigation on premature claims to ensure that courts litigate 'only existing, substantial controversies, not hypothetical questions or possibilities.' *City Commc'ns, Inc. v. City of Detroit,* 888 F.2d 1081, 1089 (6th Cir.1989)." *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 581–82 (6th Cir.2008). Another factor in the ripeness consideration is whether there is sufficient "hardship to the parties [in] withholding court consideration" until there is a legal action for damages. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

■ The burden of establishing jurisdiction is on the party seeking to invoke jurisdiction. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 342, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006).

■■ As noted above, STX, the only party still claiming that the Court has jurisdiction, premises its argument for jurisdiction on its claim for relief under the Declaratory Judgment Act. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party." 28 U.S.C.

§ 2201(a). The Supreme Court has made clear in patent litigation that "the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 126, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007) (citing *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). Consequently, a party bringing a claim under the Declaratory Judgment Act must establish that it has standing to sue, and there exists a controversy between the parties that is not moot and is ripe. These considerations often "boil down to the same question." *See id.* at 128 n. 8, 127 S.Ct. 764.

Before 2007, the Federal Circuit applied a two-part test for determining justiciability of a declaratory judgment action:

> There must be both (1) an explicit threat or other action by the patentee, which creates a *reasonable* apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) *present* activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Super Sack Mfg. Corp. v. Chase Packaging Corp.,* 57 F.3d 1054, 1058 (Fed.Cir.1995) (quoting *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993)).

Applying this test, the Federal Circuit has held that a patentee's covenant not to sue divests the court of jurisdiction. In *Super Sack,* cited by STX, the court considered a covenant not to sue for current products that left open the possibility of suit against future products. It rejected the alleged infringer's claim of jurisdiction because there was no allegation of "present activity" that might subject it to liability for infringement. The defendant had not expressed its intention to sell a product that could be accused of infringing the patent. "The residual possibility of a future infringement suit based on Chase's future acts is simply too speculative a basis for jurisdiction over Chase's counterclaim for declaratory judgments of invalidity." *Super Sack,* 57 F.3d at 1059–60. The court of appeals held that "[t]he only proper course for the trial court was to dismiss the case for lack of jurisdiction, as it did." *Ibid.*

Four years later, the Federal Circuit reiterated its rule that "a covenant not to sue for any infringing acts involving products 'made, sold, or used' on or before the filing date is sufficient to divest a trial court of jurisdiction over a declaratory judgment action." *Amana Refrigeration, Inc. v. Quadlux, Inc.,* 172 F.3d 852, 855 (Fed.Cir.1999). In that case, the court again rejected the claim that the possibility of an infringement suit against future product lines vested the court with jurisdiction:

> Amana argues that the Quadlux covenant did not remove Amana's reasonable apprehension of being sued with regard to its new products "in the pipeline," but not advertised, manufactured, marketed, or sold before the filing date. However, *an actual controversy cannot be based on a fear of litigation over future products.* The Quadlux covenant ensures that Quadlux is forever estopped from asserting liability against Amana in connection with any products that Amana advertised, manufactured, marketed, or sold before July 31, 1997, and that resolves the controversy.

*Amana,* 172 F.3d at 855–56.

In 2007, the Supreme Court decided *MedImmune, Inc. v. Genentech, Inc.,* rejecting the Federal Circuit's rule announced in *Gen–Probe Inc. v. Vysis, Inc.,* 359 F.3d 1376 (Fed.Cir.2004), that a licensing agreement will prevent a finding of an actual controversy over the validity of the underlying patent until the licensee stops

paying royalties. In *MedImmune*, the plaintiff sought a declaration that the defendant's patent was invalid after the parties had entered into a licensing agreement. The defendant argued that as long as the royalties were paid, the plaintiff did not have any apprehension that it would be sued by the defendant, so there was no controversy between the parties. Noting that a purpose of the Declaratory Judgment Act was to provide parties a vehicle for determining legal relationships without exposing themselves to serious risk, the Supreme Court found that there was an actual controversy between the parties because the licensee was paying royalties only under threat of a treble damages lawsuit. Moreover, the Supreme Court noted, the licensing agreement would not require the payment of royalties if the patent was declared invalid, and nothing in the agreement prevented a challenge to the patent's validity. So the Court concluded that the plaintiff did not have to terminate or breach its licensing agreement before challenging the validity of the patent, since the potentially accused products already were at market and the alleged infringing conduct could be easily ascertained. Along the way, the Court found that the Federal Circuit's requirement that the putative infringer must face a "reasonable apprehension of imminent suit" contradicted its precedents. *MedImmune*, 549 U.S. at 132 n. 11, 127 S.Ct. 764. The Court held the proper measure of ripeness is whether the alleged facts, "under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127, 127 S.Ct. 764 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).

Although neither *Super Sack* nor *Amana* had been expressly overruled, they applied a test that the Federal Circuit believed had been disapproved by the Supreme Court. *See Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1346 (Fed.Cir.2007). Nevertheless, following *MedImmune*, the Federal Circuit has applied the totality of circumstances test articulated in *MedImmune*, which looks to factors from its earlier test to determine whether a controversy is "of sufficient immediacy and reality." And although the Federal Circuit has acknowledged that the Supreme Court abrogated the first prong of its previous test as a *requirement*, it noted that "proving a reasonable apprehension of suit is one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Prasco, LLC v. Medicis Pharmaceutical Corp.*, 537 F.3d 1329, 1336 (Fed.Cir.2008). Moreover, the court continues to adhere to its consideration of whether there has been potentially infringing activity as an "important element in the totality of circumstances which must be considered in determining whether a declaratory judgment is appropriate." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 880 (Fed.Cir.2008).

■ When considering infringing activity, the Federal Circuit still requires a certain immediacy to the infringement. Immediacy is defined as follows:

A party may not "obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity." [*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed.Cir.1988) ]. Thus, although a party need not have engaged in the ac-

tual manufacture or sale of a potentially infringing product to obtain a declaratory judgment of non-infringement, there must be a showing of "meaningful preparation" for making or using that product.

*Id.* at 881 (citations omitted). Then, perhaps stating the obvious, the court declared, "In general, the greater the length of time before potentially infringing activity is expected to occur, 'the more likely the case lacks the requisite immediacy.'" *Ibid.* (quoting *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361, 1379 (Fed.Cir.2004)). The court then surveyed its precedents, discussing cases that fell short of the mark. *E.g., Benitec Austl., Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1346–50 (Fed.Cir.2007) (dismissing declaratory judgment counterclaim in 2005 where party anticipated infringing activity to take place in "at least 2010–2012, if ever," and current activities consisted of developing and submitting preliminary information to FDA); *Sierra Applied Scis., Inc. v. Advanced Energy Indus., Inc.,* 363 F.3d 1361 (Fed.Cir.2004) (finding sufficient immediacy lacking where declaratory plaintiff presented no evidence that it had built a prototype of its device until a year after commencement of suit); *Telectronics Pacing Sys., Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1527 (Fed.Cir.1992) (dismissing defibrillator component manufacturer's claim for future patent infringement where accused product was in clinical trials and "years away" from potential FDA approval); *Lang v. Pac. Marine & Supply Co.,* 895 F.2d 761, 764 (Fed.Cir.1990) (claim unripe where accused infringing ship hull would not be ready for at least nine months after complaint was filed); *Jervis B. Webb Co. v. S. Sys., Inc.,* 742 F.2d 1388, 1399 (Fed.Cir.1984) (finding no ripeness where accused device had never been used and there was insufficient evidence to show it would be used in the future).

In this case, there is presently no dispute between the parties arising from STX's activity to date. The question becomes, then, whether STX's planned activity, to the extent it has been willing to describe it, and which will not occur for over six months, is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 127, 127 S.Ct. 764. The Court finds that it is not.

First, it is useful to point out that this case is readily distinguishable from *MedImmune.* In *MedImmune,* the allegedly infringing party was coerced into paying royalties under a licensing agreement that would cease to apply if the patent were declared invalid. Here, in contrast, nothing that STX can do would subject it to suit from Warrior for infringement before August 2009. STX is not forced to make a choice between paying royalties and facing litigation—the threat of litigation has been completely eliminated for the time being.

To be sure, STX has an interest in determining whether its product infringes Warrior's patent as of August 2009. However, there is no clear description of STX's new product line, and the Court is left with nothing more than the conclusion of STX's general manager that the new gloves may include similar features to those found in the accused models. That conclusion does not provide much *factual* sustenance for the claim that a new lawsuit from Warrior—or even lawsuit-provoking behavior by STX—is immediate and real. Indeed, in an earlier filing, the defendant acknowledged the possibility that sales of the allegedly infringing product might not even occur. *See* Def.'s Resp. to First Order to Show Cause [dkt. # 27] at ¶ 6 ("While STX certainly anticipates relying on the defense of counsel with respect to sales of alleged infringing product occurring after July 31,

2009—*if, indeed, there are any such sales* ...") (emphasis added).

The Federal Circuit has indicated that immediacy may be shown if there is "'meaningful preparation' for making or using [the infringing] product." *See Cat Tech LLC*, 528 F.3d at 881. Nevertheless, that court has rejected challenges to products that, although in production, were temporally distant from actually being marketed or sold. For example, a product accused of infringement that was nine months away from completion did not give rise to a justiciable dispute. *See ibid.* (citing *Lang*, 895 F.2d at 764). It bears repeating that in this case, at least six months will pass before any infringement could take place.

Without hard facts, the Court is left with nothing but speculation and hypothesis that STX might offer a product that allegedly infringes Warrior's patent, and even then, not before several months elapse. Leaving the Court to render "an opinion advising what the law would be upon a hypothetical state of facts," *see MedImmune*, 549 U.S. at 127, 127 S.Ct. 764 (internal quotations omitted), the conclusion is unavoidable that the present "dispute" fails to satisfy Article III's actual controversy requirement.

Finally, although the parties have not addressed this point, it bears noting that the exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory, *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and at times the better exercise of discretion favors abstention, "[e]ven assuming that the immediacy and reality prerequisites for declaratory judgment relief have been met." *Cat Tech*, 528 F.3d at 883 (citing *SanDisk v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed.Cir.2007); *Cardinal Chem. Co. v. Morton, Int'l, Inc.*, 508 U.S. 83, 95 n. 17, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)). "By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 969 (6th Cir.2000) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). "In deciding whether to entertain a declaratory judgment request, a court must determine whether resolving the case serves the objectives for which the Declaratory Judgment Act was created." *Cat Tech*, 528 F.3d at 883 *Cat Tech*, 528 F.3d at 883 (citing *Capo, Inc. v. Dioptics Med. Prods., Inc.*, 387 F.3d 1352, 1355 (Fed.Cir. 2004); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813–14 (Fed.Cir.1996)). The Declaratory Judgment Act was designed to prevent cases where an individual must choose between "abandoning his rights or risking prosecution." *MedImmune*, 549 U.S. at 129, 127 S.Ct. 764. At this time, given the settlement agreement, STX faces no risk of litigation for its present conduct, and its risk of suit in the distant future rests within its immediate control. Even if the dispute were sufficient to bestow jurisdiction on the Court, the Court would decline to exercise this jurisdiction under the Declaratory Judgment Act at this time.

### III.

The Court finds that the facts of the present case do not establish an actual or imminent dispute between the parties. Therefore, the defendant and counterclaimant has not established that its counterclaim meets the case-or-controversy requirements of Article III or 28 U.S.C. § 2201(a).

Accordingly, it is **ORDERED** that the action is **DISMISSED without prejudice.**